PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellant,*

v.

GEORGE W. CEPHAS,
          *Defendant-Appellee.*

No. 00-4780

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge.
(CR-00-240)

Argued: April 6, 2001

Decided: June 19, 2001

Before WIDENER and WILKINS, Circuit Judges, and
Patrick Michael DUFFY, United States District Judge
for the District of South Carolina, sitting by designation.

---

Vacated and remanded by published opinion. Judge Widener wrote
the opinion, in which Judge Wilkins and Judge Duffy joined.

---

## COUNSEL

**ARGUED:** Alessandra DeBlasio, Assistant United States Attorney,
Alexandria, Virginia, for Appellant. William Hartman Sooy, Rich-
mond, Virginia, for Appellee. **ON BRIEF:** Helen F. Fahey, United
States Attorney, Alexandria, Virginia; Michael T. Hosang, Special
Assistant United States Attorney, Richmond, Virginia, for Appellant.

## OPINION

WIDENER, Circuit Judge:

The government appeals from the district court's order granting George Cephas's motion to suppress marijuana, crack cocaine, and two firearms seized by police officers during a search of Cephas's apartment. For the reasons stated below, we reverse.

### I.

On June 14, 2000, Richmond Police Sergeant Scott Shapiro was on patrol in a marked police car when a concerned citizen (informant) flagged him down.[1] The informant claimed to have just come from an apartment where a 14 year old girl was smoking marijuana with a man named Cephas.[2] The informant also reported that the apartment in question was one block away from where Sergeant Shapiro was then located. Sergeant Shapiro promptly went to investigate at the address indicated by the informant, 2413 Lamb Avenue,[3] which he found to be a house divided into apartments.

Sergeant Shapiro knocked on the front door of the house, which apparently opened to a common area, and his knock was answered by a woman. In response to Sergeant Shapiro's inquiry, the woman told him that a man named Cephas rented the apartment at the top of the stairs to the right. Sergeant Shapiro then went up the stairs and knocked on Cephas's door. The door was opened by a man, whom the

---

[1] During his testimony at the suppression hearing, Sergeant Shapiro stated that he did not know the informant. Shapiro had never seen the informant before or after June 14, 2000. Further, Shapiro declined to provide a physical description of the informant, fearing Cephas then would know who had spoken to the police.

[2] Shapiro testified at the suppression hearing that the informant told him the girl "was smoking marijuana with two older gentlemen named Cephas." The government's brief and the district court's findings of fact, however, both say that the informant told the officer about only one man named Cephas.

[3] The district court refers to this location as 2403 Lamb Avenue. We treat this difference as a typographical error.

district court determined was Cephas. Sergeant Shapiro observed both that a young girl was sitting in the apartment and that "a strong smell of marijuana was coming from the apartment."[4] When Sergeant Shapiro asked if he could come inside to speak with Cephas, Cephas tried to slam shut the door. Sergeant Shapiro then pushed his way into the apartment.

Once inside the apartment, Sergeant Shapiro observed eight or nine people and what he believed to be a marijuana "roach" in an ashtray. He then told the people in the apartment to stay in the living room where they were, and he called for additional officers. Within ten minutes or so, more officers arrived. The officers then secured the location by patting down the occupants of the apartment which they considered conducting a protective sweep of the area in which they were sitting.

Sergeant Shapiro also called one Detective O'Connor to have his help in quickly obtaining a search warrant allowing a search of the apartment. O'Connor obtained the search warrant at approximately 4:30 p.m. and arrived with it at Cephas's apartment approximately one and one-half hours after Sergeant Shapiro first entered it.

While the officers were waiting for the search warrant, the eight or nine occupants were allowed to get glasses of water but were not permitted to use the telephone, and they were only permitted to use the bathroom if they first consented to be searched. Also during this time, Cephas refused to consent to a search of the apartment and made repeated complaints about the presence of the officers. Cephas also stated that as long as he was in his own home with his own family there was nothing illegal about having a little marijuana.

Either during the protective sweep or after the search warrant arrived, officers found in the apartment several "cigar blunts" contain-

---

[4]The district court found that as Sergeant Shapiro "approached the residence, which contained numerous apartments, he smelled marijuana." The district court also found that when Cephas opened his door, the officer "still smelled marijuana." We find nothing in the record to support that Shapiro smelled the marijuana smoke as he "approached the residence."

ing marijuana, a plastic bag containing individually wrapped packages of a substance later determined to be crack cocaine, a .22 caliber pistol, a 12 gauge shotgun without a serial number, and a police scanner.[5] Cephas was subsequently indicted on one count of possession of cocaine base in violation of 21 U.S.C. § 844, one count of possession of marijuana in violation of 21 U.S.C. § 844, two counts of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1), and two counts of possession of firearm by a user of controlled substances in violation of 18 U.S.C. § 922(g)(3).

## II.

We review the district court's findings of historical fact for clear error. See *Ornelas v. United States*, 517 U.S. 690, 699 (1996). We review *de novo* the ultimate questions of reasonable suspicion and probable cause to make a warrantless search or seizure. See *Ornelas*, 517 U.S. at 691, 699.

The district court held a suppression hearing on September 3, 2000, and heard testimony from Sergeant Shapiro and from Earl Camp, one of the police officers who responded to Sergeant Shapiro's call for assistance after he entered the apartment. The district court suppressed the evidence seized from Cephas's apartment because it concluded that the anonymous tip which led Sergeant Shapiro to the house in which Cephas rented an apartment was constitutionally insufficient under *Florida v. J.L.*, 529 U.S. 266 (2000).

The issue in *J.L.* was whether an anonymous tip gave officers rea-

---

[5]The district court made a finding of fact that, as Cephas asserts, the marijuana, cocaine and shotgun were found during the protective sweep. The government argues that these items were found only after the warrant arrived. It appears that the only evidence in the record supports the view that these items were not found until after the warrant arrived, but we need not decide whether the district court's finding of fact on this issue was clearly erroneous because it is not necessary to the question now before us. Remarkably, the search warrant is not included in the record on appeal. Upon inquiring, we are also advised that is not a part of the record retained in the district court, although a copy of the warrant, less the return is in the joint appendix.

sonable suspicion to stop and frisk an individual reported to be carrying a firearm. The anonymous tip at issue in the case was made by telephone to the Miami-Dade Police and reported that a young black male wearing a plaid shirt and standing at a particular bus stop was carrying a gun. *J.L.*, 529 U.S. at 268. The officers who responded to the tip saw three young black men, one wearing a plaid shirt, at the bus stop. *J.L.*, 529 U.S. at 268. Apart from the tip, the officers had no reason to suspect any of the three were engaging in illegal conduct. *J.L.*, 529 U.S. at 268. One of the officers approached J.L., who was wearing the plaid shirt, had him put his hands on the bus stop, frisked him, and seized a gun from his pocket. *J.L.*, 529 U.S. at 268. Because the Court concluded that the anonymous tip at issue, without more, was insufficient to create the reasonable suspicion that would have allowed the officers to stop and frisk J.L. as allowed under *Terry v. Ohio*, 392 U.S. 1 (1968), it held the search invalid. *J.L.*, 529 U.S. at 268.

In this case, apparently, the district court analogized Sergeant Shapiro's appearance at the house in which Cephas had an apartment, or at Cephas's apartment, to a *Terry* stop and frisk.[6] The district court concluded that because the tip about Cephas was given by an anonymous individual and at the moment it was given to Shapiro was without sufficient indicia of reliability, the tip did not create a reasonable suspicion permitting Shapiro to conduct what the district court termed "an investigatory stop," finding the tip was not "reliable in its assertion of illegality." Therefore, the court ordered not only that the seized marijuana, crack cocaine, and firearms were inadmissible, but that the evidence that Sergeant Shapiro smelled marijuana in and around Cephas's apartment was also inadmissible.

### III.

At this point, it is of some consequence that we recount the situation which faced Sergeant Shapiro. He had been told, face to face, by an informant, that there probably was occurring a serious felony

---

[6]As the district court said at the suppression hearing, "It seems to me that the only issue in this case is why did Sergeant Shapiro appear at 2403 Lamb Avenue in the first instance"? This statement was later repeated in the same hearing.

under Virginia law, furnishing illegal drugs to an infant, with a ten-year prison term minimum penalty. He was given the exact address of the nearby apartment in which the illegal activity was taking place, the name of Cephas, and the participation of an infant girl; and the informant was no longer at hand. Shapiro either had to walk away from the crime or investigate. He investigated. We are of opinion his investigation was lawful and not in violation of the Fourth Amendment, as we will set forth below.

A.

We first decide whether Sergeant Shapiro's conduct from the time he received the tip until the point at which Cephas attempted to shut his apartment door implicated the Fourth Amendment. Here, we disagree with the district court's application of *J.L.* to this case. *J.L.* does not establish a rule that when officers receive a tip that by itself would not establish reasonable suspicion to conduct a *Terry* stop they are therefore constitutionally barred from conducting any investigation pursuant to that tip. We read nothing in *J.L.* that forbade the officers in that case to appear at the bus stop in an attempt to investigate the tip.[7]

Thus, Sergeant Shapiro's appearance at the address given to him by the informant was not forbidden by *J.L.* Neither was it forbidden by another rule of law of which we are aware. Cf. *United States v. Christmas*, 222 F.3d 141, 145 (4th Cir. 2000) (explaining that a "community might quickly succumb to a sense of helplessness if police were prevented from responding to the face-to-face pleas of neighborhood residents for assistance").

Sergeant Shapiro was given a face-to-face tip that a felony, delivery of drugs to a minor,[8] was likely being committed by a man or men

---

[7]The officers then would have been free, for example, to attempt to engage the youths in conversation. See *Florida v. Bostick*, 501 U.S. 429, 434 (1991) (stating that the Fourth Amendment is not implicated "simply because an officer approaches an individual and asks a few questions," so long as the encounter is consensual).

[8]Va. Code Ann. § 18.2-255 provides, in relevant part, that "it shall be unlawful for any person who is at least eighteen years of age to know-

named Cephas at a nearby apartment, and the tip was given by someone who claimed just to have left that apartment. Even if the tip by itself would not have been sufficient to establish reasonable suspicion, we fail to see how the officer properly could have done anything other than follow up the tip.

A voluntary response to an officer's knock at the front door of a dwelling does not generally implicate the Fourth Amendment, and thus an officer generally does not need probable cause or reasonable suspicion to justify knocking on the door and then making verbal inquiry. As we recently reiterated in a case involving officers who, having knocked at the defendant's door in order to, under court order, return a handgun taken from him at an earlier traffic stop, observed evidence of criminal wrongdoing through the front window of the defendant's house:

> Absent express orders from the person in possession against any possible trespass, there is no rule of private or public conduct which makes it illegal per se, or a condemned violation of the person's right of privacy, for any one openly and peaceably . . . to walk up the steps and knock on the front door of any man's "castle" with the honest intent of asking questions of the occupant thereof—whether the questioner be a pollster, a salesman, or an officer of the law.

*United States v. Taylor*, 90 F.3d 903, 909 (4th Cir. 1996) (quoting *Davis v. United States*, 327 F.2d 301, 303 (9th Cir. 1964).

---

ingly or intentionally . . . distribute . . . marijuana to any person under eighteen years of age who is at least three years his junior . . . ." Va. Code Ann. § 18.2-255(A). Virginia fixes the penalty for offenses under this statute at imprisonment for not less than ten nor more than fifty years. See Va. Code Ann. § 18.2-255(A). The act of an adult handing a marijuana cigarette to a juvenile would implicate § 18.2-255 because the state defines "distribute," as proscribed in § 18.2-255, to mean "to deliver other than by [lawfully] administering or dispensing a controlled substance." Va. Code Ann. § 54.1-3401. The tip that men were smoking marijuana with a juvenile would also have implicated at least two misdemeanor offenses: possession of marijuana under Va. Code Ann. § 18.2-250.1, and encouraging an act rendering a child delinquent under Va. Code Ann. § 18.2-371.

In this case, there is no evidence that Cephas's act of initially open-ing his door to Sergeant Shapiro was anything but voluntary. The offi-cer first knocked at the front door of the house in which Cephas reportedly rented an apartment. A woman answered and said that a man named Cephas rented an upstairs apartment. When Sergeant Sha-piro then walked from the front door of the house up the stairs to Cephas's apartment door, he apparently did so through an area com-mon to the several separate apartments in the house, an area where any pollster or salesman could have presented himself. In any case, Sergeant Shapiro's movement from the front door of the house to Cephas's apartment door was made with the obvious consent of the woman who answered his knock at the front door of the house and who then directed him up the stairs. Sergeant Shapiro testified that he next knocked on Cephas's door and the door then opened. Nothing in the record suggests the officer used his authority to command that the door be opened. Indeed, the district court found that Cephas was not aware that it was a police officer who was knocking at his door until the door was already open.[9]

When Cephas opened his apartment door without knowing who was on the other side, he voluntarily exposed to the public any odors and such a view as one standing at the door could perceive. None of Sergeant Shapiro's conduct up to that point, at which he smelled "a strong smell of marijuana coming from the apartment" and "saw a young girl sitting" in the apartment constituted a search within the meaning of the Fourth Amendment. See *Taylor*, 90 F.3d at 909; see also *Katz v. United States*, 389 U.S. 347, 351 (1967) ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection"). Thus, it was error for the district court to suppress evidence that the officer smelled mar-ijuana in and around Cephas's apartment.

B.

Cephas rejected Sergeant Shapiro's request that he be allowed to come inside the apartment to talk, and Cephas tried to shut his door in the face of the officer, something he ordinarily would have had

---

[9]The district court found that Cephas "attempted to close the door when he realized that Sergeant Shapiro was a police officer . . . ."

every right to do. Sergeant Shapiro, on the other hand, then pushed open the door of the apartment, something he ordinarily would have had no right to do absent a warrant. The question that we now address, then, is whether Sergeant Shapiro's warrantless entry into Cephas's apartment was lawful.

The Fourth Amendment says that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. 4. Its central requirement is one of reasonableness. See *Texas v. Brown*, 460 US. 730, 739 (1983). Warrantless entries into a residence are presumptively unreasonable. *Payton v. New York*, 445 U.S. 573, 586 (1980). Nevertheless, an exception to the warrant requirement is made when certain exigent circumstances exist. For example, where police officers (1) have probable cause to believe that evidence of illegal activity is present and (2) reasonably believe that evidence may be destroyed or removed before they could obtain a warrant, exigent circumstances justify a warrantless entry. See *United States v. Turner*, 650 F.2d 526, 528 (4th Cir. 1981).

Sergeant Shapiro smelled "a strong smell of marijuana coming from the apartment." Therefore, when Cephas began to close the apartment door, this odor alone would almost certainly have given Sergeant Shapiro probable cause to believe that contraband—marijuana—was present in the apartment. See *United States v. Grissett*, 925 F.2d 776 (4th Cir. 1991) (instructing that the odor of marijuana coming from a motel room provided exigent circumstances to justify a warrantless entry).

The tip given to Sergeant Shapiro provided additional evidence to support probable cause. Unlike the anonymous telephone tip in *J.L.*, the tip in this case was made face-to-face by an individual who flagged down the officer and claimed just to have left Cephas's apartment, which was only a block away from where the officer received the tip. See *United States v. Christmas*, 222 F.3d 141, 144 (reasoning that face-to-face encounter with informant who provided tip when close in time and distance from the alleged illegal activity bolstered credibility of the informant). But the tip *alone* would not have given Sergeant Shapiro probable cause to believe that contraband was present in the apartment. Unlike *J.L.*, however, the officer here confirmed

(1) that a man named Cephas indeed had an apartment at the address reported by the informant; (2) that a young girl indeed was inside the apartment; and (3) that marijuana, an illegal drug, indeed, was being smoked in the apartment. See *J.L.*, 529 U.S. at 272 (requiring that tip not only reliably identify the person the tipster seeks to accuse, but that the tip "be reliable in its assertion of illegality"). Here, the officer's corroboration of the tip's particulars confirms that Sergeant Shapiro had probable cause when Cephas attempted to shut his door.

Having concluded that officer Shapiro had probable cause to believe contraband was inside the apartment, and that a felony might well be taking place, we next address the question of whether his decision to make a warrantless entry into the apartment—rather than to wait and obtain a search warrant—was justified by exigent circumstances. Our inquiry here is guided by *United States v. Taylor*, 650 F.2d 526 (4th Cir. 1981), which sets out several factors for analyzing the question of exigent circumstances, including:

> the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) the officer's reasonable belief that the contraband is about to be removed or destroyed; (3) the possibility of danger to police guarding the site; (4) information indicating the possessors of the contraband are aware that the police are on their trail; (5) the ready destructibility of the contraband.

*United States v. Taylor*, 650 F.2d at 528. The government argues that Cephas was aware that a police officer was on his doorstep, that marijuana is readily destructible, and that Sergeant Shapiro reasonably believed that the marijuana would have been destroyed had he waited for a warrant. These reasons alone would have justified his warrantless entry. That Sergeant Shapiro also reasonably believed a man or some men were inside the apartment plying a 14 year old girl with marijuana only added to the degree of urgency involved in this case. Therefore, we conclude that after receiving the tip and then smelling the marijuana coming from the apartment where he saw the young girl, exigent circumstances justified Sergeant Shapiro's warrantless entry. Because exigent circumstances justified Sergeant Shapiro's warrantless entry, it was error for the district court to suppress the marijuana, cocaine, and firearms seized in Cephas's apartment.

Accordingly, the order of the district court appealed from is vacated, and the case is remanded for further proceedings not inconsistent with this opinion.

*VACATED AND REMANDED WITH INSTRUCTIONS*