COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Elder and Annunziata
Argued at Chesapeake, Virginia


CARLTON HARDEN CHERRY
                                                                    OPINION BY
v.        Record No. 2439-03-1                          JUDGE LARRY G. ELDER
                                                                 NOVEMBER 23, 2004
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
                                Mark S. Davis, Judge

          Joseph R. Winston, Special Appellate Counsel (Felipita Athanas;
          Indigent Defense Commission, on briefs), for appellant.

          Donald E. Jeffrey, III, Assistant Attorney General (Jerry W. Kilgore,
          Attorney General, on brief), for appellee.


        Carlton Harden Cherry (appellant) appeals from his bench trial conviction for possession

of cocaine.  On appeal, he contends the trial court erroneously admitted into evidence the cocaine

providing the basis for his arrest and conviction because it was discovered pursuant to a

warrantless entry of his residence.  We hold that when an officer comes to the door of a

residence to investigate a non-drug-related crime, smells the odor of burning marijuana when an

occupant voluntarily answers the door, and hears significant movement inside the house after the

occupant calls out to those inside that the police are at the door, probable cause and exigent

circumstances exist to permit a warrantless entry of the residence to prevent the destruction of

evidence and to effect a seizure of that evidence.[1]  Thus, we affirm the conviction.

---

[1] The parties and the trial court analyzed this case as involving an entry based on exigent
circumstances rather than an entry merely to secure the premises.  See Crosby v.
Commonwealth, 6 Va. App. 193, 200-01, 367 S.E.2d 730, 735 (1988) (permitting entry where
probable cause exists to believe evidence of crime is on premises and, although officers "lack
exigent circumstances," a "'substantial risk [exists] that evidence will be lost or destroyed,'"

I.

BACKGROUND

On March 19, 2003, while on routine patrol, Officer P. Lipscomb passed the house at 706 Confederate Avenue. Officer Lipscomb knew appellant resided there, but no evidence established who actually owned the residence. Officer Lipscomb had "not receive[d] a call to go to the house," but testified that, "from knowing [appellant] and knowing the past of his house, the problems with that house," he was "just riding by." Officer Lipscomb saw a Ford truck in the driveway. Lipscomb "ran the tags on the [truck]," which "[c]ame back stolen." The record does not make clear whether the information Lipscomb received indicated that only the tags were stolen or that both the tags and the truck were stolen. However, after receiving information that at least the tags were stolen, Lipscomb got out of his vehicle, approached the truck, and noticed, based on his experience, that the ignition was "popped" or "missing," which he testified was "a common way to start [a car] without [a] key[]."

Officer Lipscomb related the subsequent events as follows:

> I walked up to the porch . . . [and] knocked on the door to see if I could get a response, try to figure out whose truck it was or if they even knew anything about the truck. A female . . . answered [the door]. As soon as she did, I could smell marijuana coming from inside the house.

Officer Lipscomb testified that, based on his training and experience, he was familiar with the odor of both burning and unburned marijuana and that the odor he detected was the distinctive odor of burning marijuana.

As soon as the woman opened the door and Officer Lipscomb smelled burning marijuana,

> [the woman] immediately yelled back into the back, turned around and stated that the police were at the door.

---

permitting "a limited security check of the premises for people who might destroy evidence" before a warrant can be obtained). Thus, we conduct our review based on an exigent circumstances analysis.

There was like a blanket or sheet or something that was hanging from the ceiling . . . off to the right [of the door] . . . so [Officer Lipscomb] couldn't see what was on the other side . . . . [W]hen [the woman] yelled back the police were there, [Officer Lipscomb] could hear people in there beg[in] to move around.

At that point, Officer Lipscomb entered the house, pushed the sheet aside, and saw appellant and numerous other people sitting around a table and on a couch. On the table, Officer Lipscomb saw "several crack pipes, cocaine residue, razor blades, just drug paraphernalia of that sort." Appellant was holding what appeared to be a crack pipe and, in response to Officer Lipscomb's questions, admitted he had "a couple of rocks" in his pocket, which he relinquished to Officer Lipscomb. Subsequent laboratory analysis determined the rocks were 0.36 grams of cocaine.

Appellant was arrested and indicted for possession of cocaine, and he moved to suppress the cocaine as the product of an illegal warrantless entry of his residence. He specifically argued only that the officer lacked exigent circumstances to support the entry, but he also cited a case in which the Court of Appeals concluded "there was no probable cause and exigent circumstances," which he argued was comparable to his case. The Commonwealth argued that the existence of the stolen license plates and "popped" ignition, coupled with the officer's detection of the odor of marijuana, gave him reason to believe that both thieves and marijuana might be in the house and that the people behind the sheet might be armed. It also argued that the odor of burning marijuana was a sufficient exigent circumstance for entry because, "[b]y its very nature, marijuana is the type of thing that if it's being burned, it's being destroyed."

The trial court noted the federal district court decision in Pineda v. City of Houston, 124 F. Supp. 2d 1057 (S.D. Tex. 2001), in which the court held that the odor of burned marijuana, standing alone, was insufficient to provide probable cause and exigent circumstances to enter a private residence. The court said the decision in Pineda recognized the existence of cases holding the odor of burning marijuana "itself proves that evidence of criminal conduct is being

- 3 -

destroyed." However, the court in Pineda reasoned that those cases failed to recognize two United States Supreme Court decisions, Johnson v. United States, 333 U.S. 10, 68 S. Ct. 367, 92 L. Ed. 2d 436 (1948), and Welsh v. Wisconsin, 466 U.S. 740, 104 S. Ct. 2091, 80 L. Ed. 2d 732 (1984). The court in Pineda opined that "'the smell of burning narcotics (marijuana) does not evidence an offense that is sufficiently grave to justify the entry and search of a private residence without a warrant.'" 124 F. Supp. 2d at 1075. The court in Pineda went on to cite Welsh, where the offense suspected was a DUI in which the defendant had fled the scene and the Court stated that "although no exigency is created simply because there is probable cause to believe that a serious crime has been committed, application of the exigent-circumstances exception in the context of a home entry should rarely be sanctioned when there is probable cause to believe that only a minor offense . . . has been committed." Welsh, 466 U.S. at 753, 104 S. Ct. at 2099.

In denying appellant's motion to suppress, the court observed further:

> The Virginia Supreme Court does not appear to have spoken on the matter . . . .
>
>      \*     \*     \*     \*     \*     \*     \*
>
> [I]n the [United States] Supreme Court analysis [in Welsh,] the gravity of the underlying offense seems to be particularly important.
>
>      \*     \*     \*     \*     \*     \*     \*
>
>      It seems to me that if I'm a police officer and I go to the front door of someone's home having, for whatever reason, noticed this vehicle there, the plates have been stolen, and then I notice that the ignition is popped and then I go up to the front door and someone then turns around and says, "The police are here," and I can't see what's behind that blanket or whatever it is that's obstructing my view, and at the same time I smell marijuana, frankly, I'm going to be quite nervous if I'm the police officer, and I think that the reasonable police officer probably would. I think this passes . . . the [United States] Supreme Court's test.
>
>     . . . . I'm going to [deny] the motion to suppress.

Following a bench trial, the trial court convicted appellant of the charged offense, and appellant noted this appeal.

II.

ANALYSIS

On appeal of a ruling on a motion to suppress, we view the evidence in the light most favorable to the prevailing party, here the Commonwealth, granting to the evidence all reasonable inferences deducible therefrom. Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them," McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc), but we review *de novo* the trial court's application of defined legal standards such as probable cause and reasonable suspicion to the particular facts of the case, Ornelas v. United States, 517 U.S. 690, 699, 116 S. Ct. 1657, 1663, 134 L. Ed. 2d 911 (1996).

The United States Supreme Court has held that, "absent probable cause and exigent circumstances, warrantless [entries and] arrests in the home are prohibited by the Fourth Amendment." Welsh, 466 U.S. at 741, 104 S. Ct. at 2093; Payton v. New York, 445 U.S. 573, 590, 100 S. Ct. 1371, 1382, 63 L. Ed. 2d 639 (1980). "Exigent circumstances justify a warrantless entry . . . only when the police have probable cause to obtain a search warrant." Alexander v. Commonwealth, 19 Va. App. 671, 674, 454 S.E.2d 39, 41 (1995). "[W]arrantless entries into dwellings, followed by searches, seizures, and arrests therein . . . are presumed to be unreasonable, in Fourth Amendment terms, casting upon the police a heavy burden of proving justification by exigent circumstances." Verez v. Commonwealth, 230 Va. 405, 410, 337 S.E.2d 749, 752-53 (1985); see Welsh, 446 U.S. at 750.

In each such case, the court must determine "whether the law enforcement officers had probable cause at the time of their warrantless entry to believe that cognizable exigent circumstances were present." Keeter v. Commonwealth, 222 Va. 134, 141, 278 S.E.2d 841, 846 (1981) (entry to prevent destruction of evidence). We evaluate the existence of probable cause under a standard of objective reasonableness. See, e.g., Whren v. United States, 517 U.S. 806, 813, 116 S. Ct. 1769, 1774, 135 L. Ed. 2d 89 (1996). "The officers are not required to possess either the gift of prophecy or the infallible wisdom that comes only with hindsight. They must be judged by their reaction to circumstances as they reasonably appeared to trained law enforcement officers to exist when the decision to enter was made." Keeter, 222 Va. at 141, 278 S.E.2d at 846.

A.

PROBABLE CAUSE FOR ENTRY

The Commonwealth contends appellant failed to preserve for appeal the argument that the police lacked probable cause to believe an occupant of the subject residence was violating the law and that contraband was on the premises. We hold that appellant preserved this argument for appeal by (1) citing a decision of this Court in which we concluded "there was no probable cause and exigent circumstances"[2] and (2) arguing that decision was comparable to his case.

We conclude on the merits that the detection of the odor of burning marijuana emanating from the open door of a residence, by a credible law enforcement officer who is familiar with its smell, provides that officer with probable cause to believe contraband is present inside the residence. See Johnson, 333 U.S. at 13, 68 S. Ct. at 368-69 (noting that "[a]t the time entry was

_____

[2] The decision was unpublished, but that fact is not material to deciding whether an argument has been preserved for appeal. The touchstone of our inquiry is whether the trial court was given the opportunity to consider the claimed error and rule on the matter. Martin v. Commonwealth, 13 Va. App. 524, 530, 414 S.E.2d 401, 404 (1992) (en banc).

demanded the officers were possessed of evidence which a magistrate might have found to be probable cause for issuing a search warrant" and that "[i]f the presence of odors is testified to before a magistrate and he finds the affiant qualified to know the odor, and it is one sufficiently distinctive to identify a forbidden substance, this Court has never held such a basis insufficient to justify the issuance of a search warrant"); see also United States v. Cephas, 254 F.3d 488, 494 (4th Cir. 2001) (holding that "'a strong smell of marijuana coming from the apartment' . . . [standing] alone would almost certainly have given [the officer] probable cause to believe that contraband--marijuana--was present in the apartment" but not squarely addressing this issue because the officer had received additional information from an informant, which, together with the smell of marijuana, provided probable cause); United States v. Grissett, 925 F.2d 776, 778 (4th Cir. 1991) (noting defendants' concession "that the smell of marijuana emanating from [their hotel room] provided the police with probable cause to believe marijuana was being consumed in the room"); United States v. Erwin, 602 F.2d 1183, 1184 (5th Cir. 1979) (noting that Coast Guard had authority to board subject vessel without probable cause or any particularized suspicion and that, once boarding occurred, officer detected odor of marijuana, which provided probable cause to believe marijuana on board); cf. United States v. Parker, 72 F.3d 1444, 1450 (10th Cir. 1995) ("If an officer smells marijuana in the passenger compartment of a vehicle, he has probable cause to search the passenger compartment."); United States v. Haley, 669 F.2d 201, 203 (4th Cir. 1982) (recognizing "plain smell" as variation of "plain view" doctrine, holding "[s]ufficient probable cause arises" to conclude vehicle contains marijuana "when the officer smells marijuana inside the vehicle" (citing United States v. Sifuentes, 504 F.2d 845 (4th Cir. 1974)).  See generally Richard P. Shafer, Validity of Warrantless Search of Other than Motor Vehicle or Occupant of Motor Vehicle Based on Odor of Marijuana--Federal Cases, 191 A.L.R. Fed. 303 (2004).

Further, appellant presented no argument that Officer Lipscomb had violated the Fourth Amendment before he detected the odor of marijuana emanating from appellant's residence. "A voluntary response to an officer's knock at the front door of a dwelling does not generally implicate the Fourth Amendment, and thus an officer generally does not need probable cause or reasonable suspicion to justify knocking on the door and then making verbal inquiry." Cephas, 254 F.3d at 494.

Here, Officer Lipscomb knew the vehicle parked in the driveway of appellant's residence bore stolen license plates, and his additional investigation revealed the vehicle's ignition had been "popped," which was a sign that someone had driven the vehicle without a key and that the vehicle, too, might have been stolen. Thus, although Officer Lipscomb required neither probable cause nor reasonable suspicion to support his approaching appellant's door, Officer Lipscomb's actions in doing so were reasonable under the circumstances. As the Court of Appeals for the Fourth Circuit has recognized,

> "Absent express orders from the person in possession against any possible trespass, there is no rule of private or public conduct which makes it illegal per se, or a condemned violation of the person's right of privacy, for anyone openly and peaceably . . . to walk up the steps and knock on the front door of any man's "castle" with the honest intent of asking questions of the occupant thereof--whether the questioner be a pollster, a salesman, or an officer of the law."

United States v. Taylor, 90 F.3d 903, 909 (4th Cir. 1996) (quoting Davis v. United States, 327 F.2d 301, 303 (9th Cir. 1964)), quoted with approval in Cephas, 254 F.3d at 494.

Thus, we hold Officer Lipscomb had probable cause to believe that evidence of illegal activity was present, and we turn to the question whether exigent circumstances existed to justify Lipscomb's warrantless entry. See Cephas, 254 F.2d at 494-96.

B.

EXION CIRCUMSTANCES

EXIGENT CIRCUMSTANCES

As outlined by the Virginia Supreme Court, exigent circumstances relevant to justifying entry of a private residence upon a showing of probable cause that evidence of a crime will be found inside include:

> [(1)] the officers' reasonable belief that contraband is about to be removed or destroyed; [(2)] the possibility of danger to others, including police officers left to guard the site [while a warrant is obtained]; [(3)] information that the possessors of the contraband are aware that the police may be on their trail; [(4)] whether the offense is serious, or involves violence; . . . [(5)] whether the officers have strong reason to believe the suspects are actually present in the premises; [and] [(6)] the likelihood of escape if the suspects are not swiftly apprehended . . . .

Verez, 230 Va. at 410-11, 337 S.E.2d at 753. The Court noted this list is not exhaustive and that these are merely relevant factors in the determination of whether sufficient exigent circumstances exist. Id. A proper showing of probable cause *and* "[e]xigent circumstances . . . may justify as reasonable a warrantless entry into a dwelling, a search of the interior, a seizure of contraband, and an arrest of those found in possession of it." Id. at 410, 337 S.E.2d at 752.

"Circumstances are not normally considered exigent where the suspects are unaware of police surveillance." United States v. Tobin, 923 F.2d 1506, 1511 (11th Cir. 1991). "Government agents may not justify an intrusion protected by the fourth amendment on the basis of exigent circumstances of their own making." Quigley v. Commonwealth, 14 Va. App. 28, 38, 414 S.E.2d 851, 857 (1992).

> [A] warrantless search is illegal when police possess probable cause but instead of obtaining a warrant create exigent circumstances. [However,] . . . "[l]aw enforcement officers are under no duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal conviction."

Tobin, 923 F.2d at 1511 (quoting Hoffa v. United States, 385 U.S. 293, 310, 87 S. Ct. 408, 417, 17 L. Ed. 2d 374 (1966)).

Applying these principles in Grissett, 925 F.2d at 778, the United States Court of Appeals for the Fourth Circuit upheld the warrantless entry of a hotel room, premises in which we have recognized the occupants had a privacy interest similar to the interest they would have had in a private residence, see Jones v. Commonwealth, 16 Va. App. 725, 727, 432 S.E.2d 517, 518 (1993). In Grissett, the police received a call from a local hotel stating that a man in the lobby had a gun. Grissett, 925 F.2d at 778. Police responded, frisked the subject, and found a revolver and ammunition. Id. The subject was unable to produce any identification but said an individual in a particular room at the hotel where he had been staying could identify him. Id. Uniformed police officers then knocked on the door of that room, identified themselves, and asked to speak to the person in whose name the room was registered. Id. Grissett opened the door of the room and stepped into the hallway, leaving the door ajar. Id. In addition to Grissett, the officers could see three other people in the room, and after asking Grissett a few questions, the officers "smelled the odor of marijuana wafting through the open doorway of [the] room." Id. The officers then entered the room, found marijuana and crack cocaine in plain view, and arrested the room's occupants. Id.

The Court held sufficient exigent circumstances existed to justify the officers' warrantless entry of the room, reasoning as follows:

> Exigent circumstances can arise when the evidence might be destroyed before a search warrant could be obtained. The police need not, as appellants suggest, produce concrete proof that the occupants of the room were on the verge of destroying evidence; rather, the proper inquiry focuses on what an objective officer could reasonably believe. Since the police had identified themselves before smelling the marijuana, an officer could reasonably conclude that the occupants of the room would attempt to dispose of the evidence before the police could return with a

warrant.  This is especially true in the case of an easily disposable substance like drugs.

In addition, we cannot accept appellants' claim that the exigent circumstances were somehow of the officers' own making. [The suspect with the gun] directed the officers to [the particular room] to establish his identity, but [the officers] were unaware that drugs were located in the room until they smelled the odor of marijuana.  Thus, the officers could not have known in advance that their conduct would precipitate an emergency involving the probable destruction of evidence.

Id. (citations omitted) (citing United States v. Socey, 846 F.2d 1439, 1444-46 (D.C. Cir. 1988)).

In Cephas, 254 F.3d at 495, the Fourth Circuit reaffirmed the exigent circumstances portion of its holding in Grissett.  After concluding the officers in Cephas had probable cause to believe marijuana was present in a particular apartment, based in part on "'a strong smell of marijuana coming from the apartment,'" it held proof "that Cephas was aware that a police officer was on his doorstep" and, thus, that "[the police officer] reasonably believed the marijuana would have been destroyed had he waited for a warrant . . . justified [the officer's] warrantless entry."  Id. at 496 (holding "reasonabl[e] belie[f] [that] a man or some men were inside the apartment plying a 14 year old girl with marijuana only added to the degree of urgency involved").

In appellant's case, like in Grissett, Officer Lipscomb was investigating a non-drug-related offense--a stolen license plate and likely stolen vehicle.  Officer Lipscomb's going to the door of the house in front of which the car was parked in an attempt to further investigate the theft was objectively reasonable behavior under the circumstances.  A woman answered Lipscomb's knock, and while he stood in the open doorway, he saw a sheet or blanket that had been hung in such a way as to prevent anyone at the front door from seeing into the house.  Although Lipscomb's view of the inside of the house was obscured by the sheet, he detected the unmistakable odor of burning marijuana.  At the same time, the woman at the door

called back into the house, announcing to its occupants that a police officer was present at the door. Immediately following the woman's statement, Officer Lipscomb heard significant movement behind the sheet, which he feared indicated the effort of occupants to destroy the burning marijuana that he smelled. We hold Officer Lipscomb acted reasonably in concluding that both the drugs and any occupants in possession of them were likely to be gone by the time he could obtain a warrant to sanction his entry of the premises. These facts support findings that sufficient exigent circumstances existed to justify the warrantless entry and that the exigencies were not of Officer Lipscomb's own making.

We find unpersuasive appellant's argument that the likely destruction of evidence does not constitute an exigent circumstance sufficient to justify a warrantless entry if the crime at issue is a minor one such as the misdemeanor offense of marijuana possession thought to be at issue here. Pursuant to Code § 18.2-250.1(A), first offense marijuana possession is a misdemeanor punishable by "confine[ment] in jail not more than thirty days and a fine of not more than $500, either or both."

The case appellant cites in support of his argument, Welsh, involved behavior considered so minor by the Wisconsin legislature that it was "a non-criminal, *civil* forfeiture offense for which no imprisonment [was] possible" and for which the maximum punishment at that time was a $200 fine. Welsh, 466 U.S. at 746, 754, 104 S. Ct. at 2095, 2100 (emphasis added). Welsh's warrantless in-home arrest for driving under the influence occurred after he left the scene of an auto accident involving "[n]o damage to any person or property." Id. at 742, 104 S. Ct. at 2093. Police responded to the scene and interviewed a witness to the accident, who said that the driver was "either very inebriated or very sick" and that he "walked away from the scene" after the witness refused the driver's request to take him home. Id. at 742, 104 S. Ct. at 2094. At about 9:00 p.m., "[w]ithout securing any type of warrant," the police went to Welsh's home, where

they entered, "found him lying naked in bed," and arrested him for driving under the influence. Id. at 743, 104 S. Ct. at 2094. "[T]he only potential emergency claimed by the State was the need to ascertain [Welsh's] blood-alcohol level."[3] Id. at 753, 104 S. Ct. at 2099.

Although the Court expressed surprise that a statute proscribing driving under the influence included such a limited penalty for a first offense, the Court held that the penalty attached by a state "seems to provide the clearest and most consistent indication of the State's interest in arresting individuals suspected of that offense." Id. at 754 & n.14, 104 S. Ct. at 2100 & n.14. The Court indicated its prior holdings "allowing warrantless home arrests upon a showing of probable cause and exigent circumstances . . . [was] expressly limited to felony arrests" and implied that similar circumstances might not justify entry to arrest for a misdemeanor, even one involving controlled substances. Id. at 749-54 & n.11, 104 S. Ct. at 2097-2100 & n.11. However, it expressly avoided "consider[ing] whether the Fourth Amendment may impose an absolute ban on warrantless home arrests for certain minor offenses." Id. at 749 n.11, 104 S. Ct. at 2097 n.11.

Although the Court focused on the propriety of the arrest, it made clear that its concern was over the need to make a warrantless *entry* in order to do so. See id. at 754, 104 S. Ct. at 2100. Noting the state's minimal concern for the offense at issue as indicated by its classification of the offense as "a noncriminal, civil forfeiture offense for which no imprisonment is possible," the Court reasoned as follows:

> Given this expression of the State's interest, a warrantless home
> arrest cannot be upheld simply because evidence of the petitioner's

---

[3] The State also attempted to justify the arrest by relying on the "hot-pursuit doctrine" and "the threat to public safety." Id. at 753, 104 S. Ct. at 2099. The Court held that "the claim of hot pursuit is unconvincing because there was no immediate or continuous pursuit of [Welsh] from the scene of a crime" and that "there was little remaining threat to the public safety" because Welsh "had already arrived home[] and had abandoned his car at the scene of the accident." Id. Thus, the only claim it evaluated in any detail was the State's assertion of a "need to ascertain [Welsh's] blood-alcohol level." Id.

> blood-alcohol level might have dissipated while the police
> obtained a warrant.  To allow a warrantless home *entry* on these
> facts would be to approve unreasonable police behavior that the
> principles of the Fourth Amendment will not sanction.

Id. (emphasis added) (footnote omitted).  Thus, although the Court was not confronted with the issue of the reasonableness of an entry to search for contraband, its concerns over the warrantless nature of the entry would appear to apply regardless of whether the entry was to make an arrest or to search for contraband.

Nevertheless, we conclude Welsh does not require the conclusion that appellant urges.  In Illinois v. McArthur, 531 U.S. 326, 121 S. Ct. 946, 148 L. Ed. 2d 838 (2001), the Court revisited its holding in Welsh.  McArthur was suspected of possessing "dope" and was ultimately found to have a quantity of marijuana constituting a misdemeanor offense punishable under Illinois law by up to thirty days in jail.  Id. at 329, 335-36, 121 S. Ct. at 948-49, 952.  After the police received a tip about the "dope" from McArthur's estranged wife and McArthur denied the officers' request to enter and search the couple's trailer, one officer left to get a search warrant while the other remained at the trailer.  Id. at 328-29, 121 S. Ct. at 948-49.  That officer told McArthur he would not be permitted to reenter the trailer without a police escort, and he "stood just inside the door to observe what [McArthur] did" when McArthur reentered the trailer "two or three times . . . to get cigarettes and to make phone calls."  Id. at 329, 121 S. Ct. at 949.  Less than two hours later, after obtaining a warrant, police searched the trailer and found a small amount of marijuana and related paraphernalia.  Id. at 329, 121 S. Ct. at 949.

McArthur argued that the misdemeanor offenses for which he was convicted were "minor offenses" under Welsh and that they did not justify "the restraint [imposed], keeping him out of his home," which he contended was "nearly as serious" as the warrantless entry in Welsh.  Id. at 335-36, 121 S. Ct. at 952.  The Court noted that it did not "need . . . [to] decide whether the circumstances before [it] would have justified a greater restriction for this type of offense."  Id. at

- 14 -

336, 121 S. Ct. at 953. Nevertheless, it found "significant distinctions" between the facts in McArthur's case and those in Welsh. Id. at 336, 121 S. Ct. at 952. It emphasized that the offenses at issue in McArthur's case "were 'jailable,' not 'nonjailable,'" and that "the need to preserve evidence of a 'jailable' offense was sufficiently urgent or pressing to justify the restriction upon entry that the police imposed." Id. Thus, the Court concluded as follows:

> [T]he police officers . . . had probable cause to believe that a home contained contraband, which was evidence of a crime. They reasonably believed that the home's resident, if left free of any restraint, would destroy that evidence. And they imposed a restraint that was both limited and tailored reasonably to secure law enforcement needs while protecting privacy interests. In our view, the restraint met the Fourth Amendment's demands.

Id. at 337, 121 S. Ct. at 953. Justice Stevens, the lone dissenter, would have applied Welsh to "place a higher value on the sanctity of the ordinary citizen's home than on prosecution of this petty offense." Id. at 340, 121 S. Ct. at 954-55 (Stevens, J., dissenting).

In Verez, the Virginia Supreme Court cited the United States Supreme Court's decision in Welsh, noting that one of the factors relevant in determining whether exigent circumstances sufficient to justify entry exist is "whether the offense is serious, or involves violence." 230 Va. at 410, 337 S.E.2d at 753. However, we are unaware of any instance in which the Virginia Supreme Court or this Court has concluded that a particular crime was, as a matter of law, too minor to justify warrantless entry of a private residence to prevent the destruction of evidence simply because the suspected offense was a misdemeanor rather than a felony.

In Grissett, 925 F.2d at 778, discussed above, which was decided six years after Welsh, the Fourth Circuit upheld the entry of a hotel room based on exigent circumstances where the only crime for which the officers had probable cause was the possession and use of marijuana, a misdemeanor under the applicable state law. Id. (not mentioning Welsh); see N.C. Gen. Stat. § 90-95 (1985); see also Cephas, 254 F.3d at 496 (citing Grissett as "instructing that the odor of

- 15 -

marijuana coming from a motel room provided exigent circumstances to justify warrantless entry" and not discussing <u>Welsh</u> or <u>McArthur</u>).

Thus, in the absence of a definitive ruling by the United States Supreme Court, the Fourth Circuit has implicitly concluded, as the Supreme Court subsequently intimated in <u>McArthur</u>, that if any bright line exists for warrantless entries into the home, it should be drawn between jailable and nonjailable offenses rather than between felonies and misdemeanors. Absent an express pronouncement on this issue by the United States or Virginia Supreme Courts, we follow the Fourth Circuit's approach.

III.

For these reasons, we hold that when an officer comes to the door of a residence to investigate a non-drug-related crime, smells the odor of burning marijuana when an occupant voluntarily answers the door, and hears significant movement inside the house after the occupant calls out to those inside that the police are at the door, probable cause and exigent circumstances exist to permit a warrantless entry of the residence to prevent the destruction of evidence and to effect the warrantless seizure of that evidence. Thus, we affirm the conviction. We expressly do not consider whether the odor of burning marijuana would provide sufficient exigent circumstances for a warrantless entry if the presence of the police was not known or likely to be discovered by those suspected of burning the marijuana.

<u>Affirmed.</u>