# CIRCUIT COURT OF THE CITY OF NORFOLK

Commonwealth of Virginia

v.

William George Foster

August 21, 2015

Case No. (Criminal) CR15-1644

By Judge David W. Lannetti

Today the Court rules on the motion filed by Defendant William Foster to suppress evidence resulting from a warrantless search and seizure where a police officer, while outside of an apartment unit, grabbed Foster's hand as it protruded from a window and subsequently moved the window blinds to peer inside the apartment unit to view Foster. The two issues before the Court are (1) whether the officer possessed probable cause to support obtaining a search warrant and (2) whether exigent circumstances existed for the officer to conduct a warrantless search and seizure. The Court finds that the officer possessed probable cause to conduct a search and seizure and that exigent circumstances existed to support proceeding without a warrant based on the totality of the circumstances, including the apartment unit occupants' awareness that the officers might be on their trail and the officer's desire to prevent the removal or destruction of contraband from the apartment. The Court, therefore, denies the Motion To Suppress.

*Background*

Two Norfolk police officers responded to a call from Joshua Brown, a security guard known to the officers, at an apartment complex located at 9031 Chesapeake Boulevard regarding a complaint of marijuana smoke emanating from one of the apartment units. (Tr. 10, 24.) As the officers approached the unit, they witnessed "somebody peeking through the blinds"

near the unit's front door. (*Id.* at 11.) The officers smelled a strong odor of marijuana in the hallway outside of the unit entrance door, and one of the officers testified that the smell was "coming from the residence." (*Id.* at 12, 25.) One of the officers knocked on the front door and identified himself; a voice claiming to be a sixteen-year-old juvenile, but sounding like an adult, responded that he was waiting for a parent and that he had been instructed not to answer the door. (*Id.* at 12-14, 21-22, 26.) The officers then heard noises from within the unit that they believed sounded like drawers and cabinets shutting, doors slamming shut, "things being moved around quickly," "rummaging," and other "sounds of shuffling and disarray." (*Id.* at 13, 22-23, 26.)

Officer M. T. Winfred (the "Officer") went around to the "back corner" of the apartment complex to what he believed was the back of the apartment unit to ensure no one would escape from the unit. (*Id.* at 26-27.) While looking at a rear window that was approximately five feet above ground level and which he believed belonged to the apartment unit, the Officer witnessed the glass window being slid open and the window screen being pushed out from the window. (*Id.* at 27, 34.) The Officer observed through the window a "light-skinned black male" with "dreads" (although the Officer could not see the man's face), who then threw "a glass or a mason jar" or "what appeared to be a Pyrex measuring cup" from the window into the ivy patch below. (*Id.* at 28, 34, 37.) The Officer approached the window and, seeing the man's hand on the window sill, grabbed the hand and simultaneously saw that it belonged to Foster, whose face he now could see. (*Id.* at 35-36.) Foster "pulled back" his hand from the Officer's grasp and then slammed shut the window, which bounced back open. (*Id.*) The Officer reached into the open window, moved the window blinds aside, and saw Foster in the room. (*Id.* at 35, 37.) The Officer later retrieved a Pyrex measuring cup from the ivy patch where the item thrown from the window had landed. (*Id.* at 39.) He observed "a white powder substance" inside the cup and called the vice and narcotics division to dispatch a detective. (*Id.*) A field drug test was conducted by a vice and narcotics detective, who later notified the Officer that the white powder in the Pyrex measuring cup tested positive for cocaine. (*Id.* at 42.)

After "an hour and a half of trying to talk to [] Foster through the wall," a woman arrived at the apartment unit and indicated she was going inside to retrieve a child. (*Id.* at 39.) The woman was allowed to enter the unit and soon thereafter exited with a "toddler." (*Id.* at 38-39.) Several minutes after the woman and child exited the unit, Foster exited the apartment and was taken into custody. (*Id.* at 16, 39.) Upon arrest and after being read his Miranda rights, Foster spontaneously uttered "All this over a little residue." (*Id.* at 19, 43.)

*Analysis*

A. *Legal Standard*

Pursuant to the exclusionary rule, evidence must be suppressed if it is seized by the government in violation of the Fourth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 655 (1961). Specifically, a court shall exclude evidence that was obtained (1) as a direct result of an illegal search and seizure or (2) as a proximate result of an illegal search and seizure. *Wong Sun v. United States*, 371 U.S. 471, 485-86 (1963). For Fourth Amendment purposes, a search or seizure typically requires a warrant, and the required standard of proof for issuance of such a warrant is probable cause. U.S. Const., amend. IV.

The United States Supreme Court has held, as a general rule, that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment — subject only to a few specially established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). One such exception to the warrant requirement for searches and seizures exists when the officers "had probable cause at the time of their warrantless entry to believe that cognizable exigent circumstances were present." *Keeter v. Commonwealth*, 222 Va. 134, 141, 278 S.E.2d 841, 846 (1981); *see also Verez v. Commonwealth*, 230 Va. 405, 410, 337 S.E.2d 749, 752-53 (1985) ("Warrantless entries into dwellings, followed by searches, seizures, and arrests therein … are presumed to be unreasonable, in Fourth Amendment terms, casting upon the police a heavy burden of proving justification by exigent circumstances."). Of note, "[e]xigent circumstances justify a warrantless entry … *only* when the police have probable cause to obtain a search warrant." *Alexander v. Commonwealth*, 19 Va. App. 671, 674, 454 S.E.2d 39, 41 (1995). "One category of exigent circumstances that, together with probable cause, will justify a warrantless search of a house applies when 'evidence would be lost, destroyed, or removed during the time required to obtain a search warrant'." *Smith v. Commonwealth*, 56 Va. App. 592, 598, 696 S.E.2d 211, 214 (2010) (quoting *Mincey v. Arizona*, 437 U.S. 385, 394 (1978).

Elements to consider when determining whether exigent circumstances exist to justify a warrantless entry include, but are not limited to:

> (1) the degree of urgency involved and the time required to get a warrant; (2) the officers' reasonable belief that contraband is about to be removed or destroyed; (3) the possibility of danger to others, including police officers left to guard the site; (4) information that the possessors of the contraband are aware that the police may be on their trail; (5) whether the offense is serious, or involves violence; (6) whether officers reasonably

believe the suspects are armed; (7) whether there is, at the time of entry, a clear showing of probable cause; (8) whether the officers have strong reason to believe the suspects are actually present in the premises; (9) the likelihood of escape if the suspects are not swiftly apprehended; and (10) the suspects' recent entry into the premises after hot pursuit.

*Verez*, 230 Va. at 410-11, 337 S.E.2d at 753. As the Virginia Court of Appeals pointed out, the Virginia Supreme Court in *Verez* "noted this list is not exhaustive and that these are merely relevant factors in the determination of whether sufficient exigent circumstances exist." *Cherry v. Commonwealth*, 44 Va. App. 347, 360 (2004).

When responding to a motion to suppress, the Commonwealth has the burden to prove admissibility of the seized evidence by a preponderance of the evidence. *Colorado v. Connelly*, 479 U.S. 157, 168 (1986). Police actions are tested based on objective reasonableness without regard to the underlying intent or motivation of the officers. *Poindexter v. Commonwealth*, 16 Va. App. 730, 734, 432 S.E.2d 527, 529-30 (1993).

## B. *Positions of the Parties*

Prior to the hearing, Foster provided to the Court a very brief motion to suppress, and the Commonwealth elected not to respond on brief. The parties presented their arguments at the August 6, 2015, hearing, after which the Court indicated that the parties would have an opportunity to submit post-hearing briefs. No briefs were submitted.

Foster seeks to suppress the visual identification that occurred as a result of the Officer grabbing his hand and simultaneously looking at his face, as well as the Officer's identification of him when the Officer pushed aside the blinds on the rear apartment unit window and saw his face. Foster clarified and conceded at the hearing that his motion did not extend to the Officer's identification of "a light-skinned black male" with "dreads" inside an apartment unit prior to grabbing Foster's hand or to the Officer witnessing an object being thrown from the rear apartment window. (Tr. 74.)

The Commonwealth asserts that probable cause existed to search the apartment unit. The Commonwealth further argues that exigent circumstances justified the warrantless seizure of Foster via the Officer grabbing Foster's hand and the warrantless search of the apartment unit via the Officer's pushing aside the apartment window blinds and peering inside, both because the alleged possessors of contraband were aware that the officers may be on their trail and in order to prevent the removal or disposal of contraband. The Commonwealth conceded at the hearing that the Officer's actions at the rear of the apartment with respect to observing Foster constitute a seizure and a search for Fourth Amendment purposes. (Tr. 63.)

## Discussion

The Court has considered Foster's Motion To Suppress, oral argument at the August 6, 2015, hearing, and applicable authorities. The Court now rules on the two issues before it.

### A. *The Officer Had Probable Cause To Obtain a Search Warrant*

Foster argues that the Officer did not have sufficient probable cause to obtain a search warrant. The Court disagrees, finding that, based on the totality of the circumstances known to the Officer at the time of the search and seizure, probable cause existed to believe illegal substances were present inside the apartment.

Probable cause in this case was established based on at least a combination of the following: the security guard's tip regarding the scent of marijuana emanating from the apartment unit, which the Officer independently verified; the suspicious activity of an apartment occupant looking through the blinds and then claiming that he was instructed not to answer the door; the rummaging, shuffling, and slamming inside the apartment after the officers announced their presence; and the opening of the back window and pushing out of the screen to support what appeared to be the attempted removal or disposal of evidence.

The security guard's report of marijuana smoke coming from a particular apartment unit alone arguably could have provided the Officer with sufficient probable cause to obtain a search warrant. "Generally, the two elements of particular significance in cases involving informant information are: (1) the reliability of the informant, and (2) the inherent reliability of the informant's information as determined by the nature and detail of the circumstances described and any independent corroboration of those circumstances." *McGuire v. Commonwealth*, 31 Va. App. 584, 595, 525 S.E.2d 43, 49 (2000). The tip in this case, that the scent of marijuana emanated from a particular apartment unit, was made by a security guard known to the officers and who apparently worked at the apartment complex in which the apartment unit was located. The tipster's role as a security guard provides an indicia of reliability, as he presumably was in a position to come upon and know the information about which he was providing a tip.

The informant's information, although lacking in detail beyond the scent of marijuana and the location of the apartment unit, is inherently reliable given that the informant's observation was independently corroborated by the officers when they arrived at the scene. Courts have repeatedly held that the scent of marijuana coming from a particular location provides law enforcement with sufficient probable cause to obtain a search warrant. *See, e.g., Johnson v. United States*, 333 U.S. 10, 13 (1948) ("[I]f the presence of odors is testified to before a magistrate and he finds the affiant qualified to

know the odor, and it is one sufficiently distinctive to identify a forbidden substance, [the U.S. Supreme] Court has never held such a basis insufficient to justify the issuance of a search warrant."); *United States v. Cephas*, 254 F.3d 488, 494 (4th Cir. 1991) ("[A] strong smell of marijuana coming from the apartment ... [standing] alone would almost certainly have given [the officer] probable cause to believe that contraband — marijuana — was present in the apartment."); *Cherry v. Commonwealth*, 44 Va. App. 347, 354, 605 S.E.2d 297, 302 (2004) (holding that officers had probable cause to search a house based on the scent of marijuana coming from inside the house).

Providing further support for probable cause here are the following: the suspicious activity at the front door of the apartment unit; the sounds heard by the officers, which appeared to be rummaging, shuffling, and slamming inside the apartment; and the subsequent observation of "a glass or a mason jar" or "what appeared to be a Pyrex measuring cup" being tossed out of a window after the officers made their presence known. The Court finds that these factors could cause an officer to reasonably believe that illegal activity was taking pace within the apartment unit that would justify issuance of a search warrant.

The officers knew individuals inside the apartment were aware of their presence because both officers testified that they observed an individual inside the apartment watching them from behind window blinds and heard an individual in the apartment unit respond to the officers' request to come to the door, saying that he was instructed not to answer the door. After the officers knocked and made their presence known, the officers both testified that they heard "rummaging through the apartment as doors and drawers and other things [were] being slammed and whatnot." There is some inconsistency between the officers' testimony as to whether the individual inside the apartment answered prior or subsequent to the rummaging and slamming noises, although this fact, even if resolved in favor of Foster, would not affect the outcome of the totality-of-the-circumstances analysis. Further, after hearing the slamming and rummaging, Officer Winfred went to the rear of the apartment, where he observed an individual open a window on the back corner of the building, push out the window screen, and toss a glass item out the window into an ivy patch below.

The determination of probable cause is based on the facts known by the police at the time of the search or seizure. *Wells v. Commonwealth*, 6 Va. App. 541, 550, 371 S.E.2d 19, 23-24 (1988) (citing *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968)). The search and seizure at issue occurred at the time the Officer grabbed Foster's hand and subsequently moved the window blinds to view Foster's face. The probable cause determination, and the Court's analysis of the reasonableness of the Officer's actions, therefore, take into account all of the above facts, which were known to the Officer at the time of the search and seizure.

Based on the totality of the circumstances, the reliable tip from the security officer, the suspicious activity upon the police officers' arrival, the rummaging and slamming noises inside the apartment after the occupants became aware of the officers' presence, and the apparent attempted removal or disposal of contraband evidence, the Court finds that probable cause existed at the time of Foster's seizure and the search of the apartment by grabbing Foster's hand and moving the window blinds. The Court further finds that this probable cause would support issuance of a search warrant.

## B. *Exigent Circumstances Existed To Justify the Officer Conducting a Warrantless Search and Seizure*

Foster also argues, in addition to a lack of probable cause, that exigent circumstances did not exist and that the Officer's warrantless search and seizure, therefore, violated his Fourth Amendment protections. The Court disagrees, finding that exigent circumstances existed to permit the Officer to act without a warrant based, *inter alia,* on the apartment occupant's knowledge that the officers might be on their trail and to prevent the destruction of evidence.

Although warrantless searches and seizures are generally *per se* unreasonable, the United States Supreme Court has recognized certain narrow exceptions to the warrant requirement. One such exception is when, under exigent circumstances, an officer is required to act to prevent the removal or destruction of evidence, that officer may search and/or seize without a warrant as long as he possesses probable cause to conduct the search. *See Mincey v. Arizona,* 437 U.S. 385, 394 (1978). In determining whether exigent circumstances exist to permit an officer to conduct a warrantless search of a home, "the proper inquiry focuses on what an *objective* officer could reasonably believe." *United States v. Grissett,* 925 F.2d 776, 778 (4th Cir. 1991) (emphasis added); *see also Kentucky v. King,* 131 S. Ct. 1849, 1859 (2011) ("Legal tests based on reasonableness are generally objective, and [the U.S. Supreme] Court has long taken the view that 'evenhanded law enforcement is best achieved by the application of objective standards of conduct, rather than standards that depend upon the subjective state of mind of the officer'." (quoting *Horton v. California,* 496 U.S. 128, 138 (1990)).

The Court finds that exigent circumstances existed here based on the following facts: the officers were present at the apartment complex investigating a complaint of marijuana smoke; a strong odor of marijuana was detected coming from the apartment unit; the occupant(s) of the apartment unit were aware of the officers' presence; shortly after announcing their presence, the officers heard noises of shuffling, slamming, and rummaging inside the apartment; and the Officer observed what a reasonable officer could conclude was the attempted removal or disposal of evidence from the rear window of the apartment unit.

In the instant case, the officers responded to a call based on suspected drug use. Courts have acknowledged that drugs, by their very nature, are easily disposable. *See, e.g., Richards v. Wisconsin*, 520 U.S. 385, 395 (1997); *Cherry* 44 Va. App. at 362. Upon the officers' arrival, Officer Winfred himself verified in the hallway a strong odor of marijuana, which was coming from the apartment at issue. "By its very nature, marijuana is the type of thing that if it's being burned, it's being destroyed." *Cherry*, 44 Va. App. at 354. Even prior to knocking and announcing their presence, the officers knew that occupants of the apartment unit were aware of their presence because they had seen an individual "peeking through the blinds." When one of the officers announced their presence, the officers heard shuffling, slamming, and rummaging inside the apartment, sounds a reasonable officer could conclude were consistent with attempts to destroy or dispose of evidence.

After the officers smelled the marijuana coming from the apartment unit, the occupant refused to answer the door to respond to questions, and the officers heard noises from inside the apartment, the Officer went to the back of the apartment building to ensure no one would escape from the apartment unit. While at the "back corner" of the apartment building, he observed "one of the windows being slid open and someone pressing the screen to the window open," and he saw a light-skinned black male with dreadlocks throw a glass from an apartment window into the ivy patch below. Based on the actions leading up to this point, an objective officer could reasonably conclude that the actions of the individual observed from the rear of the apartment building were an attempt to remove or dispose of contraband.

Given the totality of the circumstances, the Court finds that an objective officer could have reasonably believed that a warrantless search and seizure was necessary to prevent the destruction of contraband in light of the fact that the occupants of the apartment unit were aware of the officers' presence. The fact that the officers conducted a less extensive search than was permissible under the circumstances, by not actually entering the apartment unit, does not affect the permissibility of the search and seizure that the officers did in fact conduct.

## Conclusion

The Court denies Foster's Motion To Suppress evidence obtained from the warrantless search and seizure.