PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.                                                No. 06-4886

KARIM L. MOWATT,
            *Defendant-Appellant.*

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Deborah K. Chasanow, District Judge;
Alexander Williams, Jr., District Judge.
(8:06-cr-00003-DKC)

Argued: December 7, 2007

Decided: January 25, 2008

Before MICHAEL and TRAXLER, Circuit Judges, and
James P. JONES, Chief United States District Judge
for the Western District of Virginia, sitting by designation.

Reversed and remanded by published opinion. Judge Traxler wrote
the opinion, in which Judge Michael and Judge Jones joined.

**COUNSEL**

**ARGUED:** Paresh S. Patel, OFFICE OF THE FEDERAL PUBLIC
DEFENDER, Greenbelt, Maryland, for Appellant. Stacy Dawson
Belf, Assistant United States Attorney, OFFICE OF THE UNITED
STATES ATTORNEY, Greenbelt, Maryland, for Appellee. **ON**

**BRIEF:** James Wyda, Federal Public Defender, Baltimore, Maryland, for Appellant. Rod J. Rosenstein, United States Attorney, Baltimore, Maryland, for Appellee.

***

**OPINION**

TRAXLER, Circuit Judge:

Karim L. Mowatt appeals his convictions for four drug and weapons offenses, arguing that the primary evidence against him was obtained as the result of an illegal warrantless search of his apartment. We reverse and remand for further proceedings.

I.

On the evening of November 17, 2005, at approximately 9:19 p.m., Officers Russell Chick, Scott Hall, and Armando Parker of the Bladensburg (Maryland) Police Department were dispatched to investigate a report from a private security guard that loud music and the smell of marijuana were emanating from a tenth-floor apartment in a high-crime area. Once on the building's tenth floor, the officers identified the apartment that was the source of the loud music and marijuana odor.[1] They decided to knock on the apartment's closed door. Hearing no response, they began pounding on the door, at which time they heard "movement on the inside of the apartment confirming that somebody was walking around." J.A. 34. They also heard an aerosol can discharging. The music was then turned down and someone asked who was there, to which the officers responded, "It's the police. Open the door. We need to investigate something." J.A. 35 (internal quotation marks omitted). After "there was some back and forth" between the person inside (Mowatt) and the officers, Mowatt refused to open the door. J.A. 60. The police then "became demanding," repeatedly "order[ing]" him to open it. J.A. 61.

In response to the officers' repeated demands, Mowatt finally

***

[1] Officer Chick testified that he smelled a combination of burning and fresh marijuana.

opened the door approximately 12 to 13 inches, but the officers continued to insist that he let them into the apartment. Mowatt asked if the officers had a warrant, and they admitted that they did not. Because Mowatt had opened the door slightly, the officers were able to see him, and they began to suspect from the way he was standing that he was holding something in his right hand behind his back. They ordered him several times to show his hands, and, although Mowatt gradually opened the door slightly more, he did not show his hands. Rather, he adamantly insisted that the officers leave since they did not have a warrant. Concerned about his and his fellow officers' safety, Officer Parker grabbed for Mowatt's right shoulder, prompting Mowatt to "smack[ ] Officer Parker's hand away." J.A. 40. At that point, the officers forced their way into the apartment and wrestled Mowatt to the floor. They later determined he had not been holding anything behind his back.

The officers handcuffed Mowatt, moved him into the living room, and sat him in a chair. Officer Chick then proceeded to make a quick sweep of the apartment to ensure that no one else was inside. While doing so, he discovered a loaded .357 revolver on the bedroom floor. As he alerted the other officers, Chick heard what sounded like a struggle in the living room. When Chick emerged from the bedroom, he saw Mowatt, still handcuffed, wrestling with Officer Parker. The two slammed into a refrigerator in the kitchen as they struggled and fell to the ground, allowing the officers to once again subdue Mowatt. Because Mowatt was injured during the struggle, the officers decided to call for medical assistance.

Once the paramedics arrived, the officers noticed that the refrigerator had been knocked open during the tussle. Inside was a small open plastic bag containing several hundred pink pills. Based on his training and experience, Officer Chick concluded that the pills were methylenedioxymethamphetamine (ecstasy).

The officers decided at that point to call their supervisor and seek a search warrant. While they did so, they transported Mowatt for processing and additional medical treatment. The affidavit submitted in support of the warrant contained many of the facts concerning how they had come to enter the apartment—although not the fact that they had originally identified themselves and demanded that Mowatt open

the door—and what transpired after their entry, including their discovery of the revolver and the pills. Upon executing the resulting warrant, the police recovered the revolver with six rounds of ammunition, the bag containing hundreds of ecstasy pills, as well as several other items, including two semiautomatic assault rifles with several rounds of ammunition, a body armor vest, and almost $20,000 in currency.[2]

Mowatt was subsequently indicted for one count each of possession with intent to distribute ecstasy, *see* 21 U.S.C.A. § 841(a)(1) (West 1999); being a felon in possession of a firearm, *see* 18 U.S.C.A. § 922(g)(1) (West 2000); possession of a firearm in connection with drug trafficking, *see* 18 U.S.C.A. § 924(c) (West 2000); and being a violent felon in possession of body armor, *see* 18 U.S.C.A. § 931 (West Supp. 2007).

Mowatt moved to suppress all evidence seized from the apartment, alleging that it was fruit of an unconstitutional warrantless search. Although conceding that warrantless entry is generally justified when exigent circumstances exist, Mowatt argued that the government could not rely on the likelihood that he would destroy the evidence of marijuana possession when he realized that the police were at his door because that exigency was of the officers' own creation. Mowatt maintained that the officers should have first obtained a warrant if they wanted to require him to open his apartment door to allow an investigation of a possible drug crime. He contended that the warrant that the officers eventually obtained was merely fruit of the previous illegal search.

The district court held a hearing on the motion, in which Officer Chick testified. In light of Officer Chick's testimony, the government maintained that the officers' initial decision to knock on Mowatt's door and require him to open it was reasonable in that they were simply attempting to resolve a fairly routine noise complaint. The government suggested that "it's reasonable to at least have face-to-face contact in the setting of a doorway of an apartment" in order to dispose of the noise problem because "there's a lesser expectation of pri-

---

[2]The officers also recovered substantial amounts of marijuana and a digital scale with marijuana residue. The district court excluded that evidence as irrelevant.

vacy in the doorway" than there is with regard to "full b[lown] police activity within a residence." J.A. 91. The government argued that once the officers began to suspect that Mowatt was holding a weapon behind his back and he refused to show his hands, they were justified in attempting to grab him. The government asserted that the officers likely had probable cause to arrest Mowatt for marijuana possession and they at least had reasonable suspicion and a right to ensure that Mowatt did not have a weapon. The government alternatively maintained that even if the initial entry into the apartment was illegal, the evidence recovered via the search warrant was admissible because the officers relied in good faith on the warrant's issuance.

The district court denied Mowatt's motion. The court ruled that the officers had probable cause to arrest Mowatt for marijuana possession and for assault (for striking Officer Parker). The court further decided that once Mowatt realized the officers were present, the risk of destruction of the evidence of marijuana possession constituted exigent circumstances justifying the officers' warrantless entry into the apartment. The court reasoned that it was not necessary for the officers to obtain a warrant prior to approaching Mowatt's apartment because their purpose in knocking on the apartment door was only to resolve the noise complaint, not to investigate a possible drug crime. The court also determined that the officers acted in good faith as evidenced by the fact that they did not seize any items prior to calling their supervisor and obtaining a warrant and that their concern prior to entering the apartment had been only to resolve the noise complaint and not to investigate the smell of marijuana.

After a jury trial in which the evidence at issue was admitted, Mowatt was convicted on all counts and sentenced to 197 months' imprisonment.

## II.

Mowatt argues that the district court erred in denying his suppression motion. In considering a district court's decision regarding a motion to suppress, we review legal conclusions de novo and factual findings for clear error. *See United States v. Seidman*, 156 F.3d 542, 547 (4th Cir. 1998). We also review for clear error a finding that exi-

gent circumstances were present. *United States v. Turner*, 650 F.2d 526, 528 (4th Cir. 1981).

It is well established that, even when officers have probable cause to believe that contraband is present in a home, a warrantless search of the home is unlawful unless exigent circumstances exist at the time of entry. *See Payton v. New York*, 445 U.S. 573, 589 (1980). The government bears the burden of demonstrating exigent circumstances that overcome their presumptively unreasonable entry. *See Welsh v. Wisconsin*, 466 U.S. 740, 749-50 (1984); *Vale v. Louisiana*, 399 U.S. 30, 34 (1970). And exigency is determined at the moment the search occurs. *See United States v. Reed*, 935 F.2d 641, 643 (4th Cir. 1991) (per curiam). This court has enumerated five factors that district courts should consider in determining whether an exigency existed at the time a search commenced:

> (1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) the officers' reasonable belief that the contraband is about to be removed or destroyed; (3) the possibility of danger to police guarding the site; (4) information indicating the possessors of the contraband are aware that police are on their trail; and (5) the ready destructibility of the contraband.

*Turner*, 650 F.2d at 528.

Mowatt argues that the officers violated his Fourth Amendment rights by requiring him to open his door (even slightly) so that they could see him face-to-face. He contends that it was only this initial intrusion that enabled the officers to see him holding his arm in what they considered to be a suspicious manner, which, in turn, initiated a chain of events culminating in the discovery of the revolver and the ecstasy and issuance of the search warrant. He therefore argues that all items recovered during execution of the warrant were the result of the "exploitation of [the initial] illegality" and must be suppressed as such. *Wong Sun v. United States*, 371 U.S. 471, 488 (1963) (internal quotation marks omitted).

The government advances several arguments in response: (1) that requiring Mowatt to open his door so that they could see him face-to-

face did not constitute a search, (2) that even if it did constitute a search, the warrantless search was justified by exigent circumstances, and (3) that even if the initial intrusion was a warrantless search not justified by exigent circumstances, the evidence seized pursuant to the search warrant that the officers eventually obtained was admissible under the *Leon* good-faith exception. We address these arguments seriatim.

## A.

The government's first argument, that the officers' requiring Mowatt to open his door so that they could see him did not constitute a search, is easily resolved.[3] It is well established that a search occurs for Fourth Amendment purposes "when officers gain visual or physical access to a . . . room after an occupant opens the door not voluntarily, but in response to a demand under color of authority." *United States v. Conner*, 127 F.3d 663, 666 (8th Cir. 1997). Under such circumstances, the fact that "the officers gained visual access to the interior of a dwelling without physically entering it is irrelevant to the question [of] whether a search was effected."[4] *United States v. Winsor*, 846 F.2d 1569, 1572 (9th Cir. 1988) (en banc).

---

[3]The government also suggested at oral argument that the district court could have found that Mowatt voluntarily opened his door. However, the record is clear that Mowatt initially refused to open his door and that he only opened it slightly after the officers had identified themselves and demanded that he open it.

[4]The cases that the government contends support the opposite conclusion, *United States v. Cephas*, 254 F.3d 488 (4th Cir. 2001), *United States v. Taylor*, 90 F.3d 903 (4th Cir. 1996), and *United States v. Gwinn*, 219 F.3d 326 (4th Cir. 2000), are easily distinguishable. *Cephas* held only that no search occurred when the police simply knocked on a door and the occupant opened it, not in response to a demand under color of police authority. *See Cephas*, 254 F.3d at 494. Nor did the police demand visual access to the residence in *Taylor*, wherein the officer merely observed the interior of the residence "'from a public vantage point where he ha[d] a right to be.'" *Taylor*, 90 F.3d at 908 (internal quotation marks omitted). Finally, in *Gwinn*, we held only that exigent circumstances existed for an officer to briefly re-enter a home to retrieve shoes and a shirt for an arrestee in light of the substantial risk that the arrestee would be injured if he did not have shoes and the limited degree of intrusion involved. *See Gwinn*, 219 F.3d at 333. We did not hold that the re-entry was not a search.

B.

We next turn to the question of whether exigent circumstances justified the officers' requiring Mowatt to open his apartment door.[5] We hold that they did not.

*Johnson v. United States*, 333 U.S. 10 (1948), governs our decision. In *Johnson*, police officers obtained information from an informant that people were smoking opium in a hotel. When the officers went to the hotel to investigate, they immediately recognized the smell of opium, and then traced the odor to a particular room. Not knowing who occupied the room, the officers knocked and identified themselves as police. After a slight delay, there was "some shuffling or noise" in the room and then the defendant opened the door. *Id.* at 12 (internal quotation marks omitted). The lead officer told the defendant that he wanted to talk to her about the opium smell, and the defendant let the officers into the room. The officers proceeded to arrest the person who opened the door and searched the room, uncovering incriminating opium and smoking apparatus. A district court refused to suppress the evidence, and the Ninth Circuit affirmed.

The Supreme Court reversed. The Court concluded that the officers' entry into the room had been "demanded under color of office" and was therefore not by the defendant's consent. *Id.* at 13. It also determined that "[a]t the time entry was demanded the officers were possessed of evidence which a magistrate might have found to be probable cause for issuing a search warrant." *Id.* The Court thus held that the warrantless search was unconstitutional, noting that "[n]o reason is offered for not obtaining a search warrant except the inconvenience to the officers and some slight delay necessary to prepare papers and present the evidence to a magistrate. These are never very convincing reasons." *Id.* at 15. The Court further added that, at the time the officers announced themselves and demanded entry, there was no exigency justifying dispensing with the warrant requirement. *See id.* In particular, the Court noted: "No evidence or contraband was threatened with removal or destruction, except perhaps the fumes which we suppose in time would disappear. But they were not capable

---

[5]Mowatt does not dispute that the officers had probable cause to believe that marijuana was present in the apartment.

at any time of being reduced to possession for presentation to court."
*Id.*

We see no basis for distinguishing *Johnson* from the case at bar.
The officers here likewise offered no justification for not seeking a
warrant prior to knocking on the door, other than the slight delay or
inconvenience that obtaining a warrant might have caused, reasons
*Johnson* held were not sufficient. *See id.* Thus, although the officers
had every right to knock on Mowatt's door to try to talk to him about
the complaint, *see United States v. Cephas*, 254 F.3d 488, 494 (4th
Cir. 2001), without a warrant, they could not *require* him to open it.[6]
*See Conner*, 127 F.3d at 666.

We note that the government posited at oral argument that *Johnson*
is distinguishable from the present case because in *Johnson* the offi-
cers ordered that the hotel door be opened so that they could effect
an arrest whereas here the officers did not intend to arrest Mowatt.
Nothing in *Johnson*, however, suggests that the result there depended
on the subjective intentions of the officers at the time they gained
access to the hotel or even indicates that the Court determined what
those intentions were. To have authority to make a warrantless search,
the officers needed exigent circumstances, and *Johnson* tells us that
they were not present in this case.[7]

Relying on *United States v. Grissett*, 925 F.2d 776 (4th Cir. 1991)
(per curiam), the government maintains that exigent circumstances
justified a warrantless entry because, once the police announced their

---

[6]Additionally, as a practical matter, it was not necessary for Mowatt
to open his door in order for the officers to tell him to turn down his
music. Mowatt turned down the music before he ever opened the door,
and he and the officers were able to communicate through the closed
door, in any event.

[7]The government also contended at oral argument that the dangerous-
ness of the area weighed in favor of a determination of exigency. How-
ever, the government acknowledged before the district court that
although the apartment complex had "a history that might make an offi-
cer appropriately concerned for their safety under certain circumstances,
there's no indication that these officers had safety concerns about
responding to a smell of marijuana or loud music call." J.A. 86.

presence and Mowatt sprayed an aerosol can and temporarily refused to even crack open the door, they had reason to believe that he might destroy the evidence of the crime of marijuana possession. In *Grissett*, uniformed police officers received a call that a man in a hotel lobby had a gun. When the officers arrived, they patted the individual down and determined he did have a revolver and ammunition. When the man could not produce identification, he told them that a person in a particular room of the hotel could verify his identity. The officers knocked on the door of the room and identified themselves. Grissett opened the door. When an officer asked if he could speak to the person in whose name the room was registered, Grissett stepped out into the hall. As he did so, he left the door ajar, allowing the officers to see three other individuals in the room and to smell marijuana wafting out of the room. The officers then entered the room and found marijuana and crack cocaine in plain view.

Reviewing the denial of a motion to suppress the evidence as fruit of an unconstitutional warrantless entry into the room, we held that exigent circumstances justified the warrantless entry because the police had reason to believe that those inside the room would attempt to dispose of the evidence before they could obtain a warrant and search the room. *See id.* at 778. We rejected the notion that the exigency was "of the officers' own making" because "they were unaware that drugs were located in the room" prior to knocking on the door and thus "could not have known in advance that their conduct would precipitate an emergency involving the probable destruction of evidence." *Id.*

*Grissett* is distinguishable from the case at bar for an obvious reason: The officers in the present case were aware of the marijuana in the apartment before they decided to alert Mowatt of their presence. Unlike in *Grissett*, and as in *Johnson*, the officers here had the option of leaving the probable cause determination to a magistrate. They needed only to seek a warrant before confronting the apartment's occupants. By not doing so, they set up the wholly foreseeable risk that the occupants, upon being notified of the officers' presence, would seek to destroy the evidence of their crimes.[8] *See United States*

---

[8]The government contended at oral argument that exigent circumstances actually preceded the officers' knocking on Mowatt's door

*v. McCraw*, 920 F.2d 224, 230 (4th Cir. 1990) (holding that no exigency justified officers' warrantless entry and stating that "[a]ny risk of the destruction of evidence . . . was precipitated by the agents[ ] themselves when they knocked on the door"); *United States v. Collazo*, 732 F.2d 1200, 1204 (4th Cir. 1984) ("The government will not be allowed to plead its own lack of preparation to create an exigency justifying warrantless entry."); *see also United States v. Coles*, 437

---

because Mowatt's smoking the marijuana was itself destruction of evidence. However, that position is clearly foreclosed by *Johnson*, in which illegal drugs were also being smoked, but in which the Supreme Court held there were no exigent circumstances justifying a warrantless entry.

Nor is *Cephas*, on which the government relies, controlling. In *Cephas*, an officer had received a face-to-face tip from a citizen who claimed to have just come from an apartment where Cephas was smoking marijuana with a 14-year-old girl. The officer proceeded to the apartment and knocked on the door. When Cephas opened the door, the officer saw a young girl inside and smelled a strong odor of marijuana. Cephas tried to shut the door on the officer when he asked to come in, and the officer then pushed his way into the apartment. The warrantless entry into the apartment, in turn, led to the discovery of evidence of criminal activity. In reviewing a district court's suppression of the evidence as fruit of an unconstitutional warrantless search, we held that Cephas's original opening of the door had been consensual and that the officer had probable cause to believe that the felony of furnishing illegal drugs to an infant was ongoing. *See Cephas*, 254 F.3d at 494-95. We stated that in light of Cephas's knowledge that the officer was at his doorstep, the risk of destruction of the marijuana would have justified the warrantless entry. *See id.* at 495. Because of this risk and the officer's reasonable belief that Cephas and perhaps others were in the apartment "plying a 14 year old girl with marijuana," we held that exigent circumstances authorized the officer's entry into the apartment. *Id.* at 495.

Although we stated that the mere risk of destruction of the marijuana would be sufficient on its own to justify the warrantless entry, critically, the officer there had probable cause to believe that the marijuana was evidence not only of simple marijuana possession but of the ongoing felony of furnishing illegal drugs to an infant. In any event, because our conclusion that the warrantless entry was justified was also supported by the need to protect the girl inside the apartment, any statement that destruction of the evidence was sufficient by itself to justify the warrantless entry is merely nonbinding dicta.

F.3d 361, 370 (3d Cir. 2006) ("[I]n order to determine whether the police impermissibly manufacture or create exigent circumstances, we must look to the reasonableness and propriety of their actions and investigative tactics *preceding* their warrantless entry." (emphasis in original)); *United States v. Gould*, 364 F.3d 578, 590 (5th Cir. 2004) (en banc) (similar); *United States v. McGregor*, 31 F.3d 1067, 1069 (11th Cir. 1994) (similar); *United States v. Duchi*, 906 F.2d 1278, 1284-85 (8th Cir. 1990) (similar); *United States v. Paul*, 808 F.2d 645, 647 (7th Cir. 1986) (similar). Having created the "exigency" themselves for no apparent reason, the officers were foreclosed from relying on it to dispense with the warrant requirement.[9]

## C.

Finally, we turn to the government's contention that even assuming that the officers' initial visual access into Mowatt's apartment was gained illegally, the district court properly refused to suppress the evidence at issue in light of the fact that it was not seized until the officers obtained a warrant. We disagree.

### 1.

The exclusionary rule generally renders inadmissible evidence recovered during an unlawful search. *See Weeks v. United States*, 232 U.S. 383, 398 (1914). It also prohibits the admission of evidence that is acquired as a direct or indirect result of an illegal search unless the connection between the illegal search and the evidence has "'become so attenuated as to dissipate the taint.'" *Wong Sun*, 371 U.S. at 491 (quoting *Nardone v. United States*, 308 U.S. 338, 341 (1939)). The exclusionary rule does have limits, however, one of which was created in recognition that

> the interest of society in deterring unlawful police conduct
> and the public interest in having juries receive all probative

---

[9]"Exigency" is in quotation marks here to emphasize that it is awkward that the government takes the position that the officers were not interested in investigating any drug crime and also attempts to justify their warrantless entry by claiming that the possibility that evidence of such a crime might be destroyed justified the warrantless search.

evidence of a crime are properly balanced by putting the police in the same, not a *worse*, position tha[n] they would have been in if no police error or misconduct had occurred. When the challenged evidence has an independent source, exclusion of such evidence would put the police in a worse position than they would have been in absent any error or violation.

*Nix v. Williams*, 467 U.S. 431, 443 (1984) (emphasis in original, citations omitted). Thus, under the "independent source" doctrine, when the police discover a particular fact by illegal means but later acquire knowledge of that same fact by independent, legitimate means, evidence of that fact is not excludable as fruit of the police misconduct. *See Murray v. United States*, 487 U.S. 533, 537-41 (1988).

The Court in *Murray* specifically applied the independent source doctrine to a case in which execution of a search warrant was preceded by an illegal search of the same premises. Under that scenario, the Supreme Court held, the evidence recovered in the later search is not admissible unless the government establishes that "no information gained from the illegal [search] affected either the law enforcement officers' decision to seek a warrant or the magistrate's decision to grant it." *Id.* at 540; *see United States v. Dessesaure*, 429 F.3d 359, 369 (1st Cir. 2005) (similar); *United States v. Herrold*, 962 F.2d 1131, 1140 (3d Cir. 1992) (similar).

Here, even assuming that no information gained from the illegal search affected the magistrate's decision to issue the warrant, the government has never maintained that the officers would have sought a warrant absent their prior illegal discovery of the revolver and the ecstasy. Nor does any evidence even suggest that they would have sought a warrant had they known only about the marijuana. Indeed, the district court specifically found that the officers' concern prior to entering the apartment had only been to resolve the noise complaint and not to investigate the marijuana smell. Thus, the government has not established that the search warrant was an independent source of the items seized.

2.

Although not arguing that the warrant was a source independent of the initial, illegal search, the government does maintain that the offi-

cers reasonably relied on the warrant's validity, and thus that the *Leon* good-faith exception to the exclusionary rule applies. *See United States v. Leon*, 468 U.S. 897 (1984). As we have explained, the exclusionary rule generally renders inadmissible evidence recovered during an unlawful search. *See Weeks*, 232 U.S. at 398. It acts as "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect." *United States v. Calandra*, 414 U.S. 338, 348 (1974). In *Leon*, however, the Court observed that there is no deterrent value in penalizing an officer who reasonably relies on a magistrate's probable cause determination by executing the search authorized by the warrant. *See Leon*, 468 U.S. at 921-22. That is because it is the magistrate's responsibility to determine whether probable cause exists, and officers cannot be expected to second-guess that determination in close cases. *See id.* at 921. For that reason, *Leon* modified the exclusionary rule "so as not to bar the use in the prosecution's case-in-chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." *Id.* at 900.

The government argues that here the warrant application "included [the officers'] entire exchange with Mowatt" as well as all other pertinent facts. Brief of Appellee at 23. The government thus maintains that the magistrate approved the officers' prior actions and that the officers relied in good faith on that determination in executing the warrant. Therefore, the government contends, the *Leon* exception should allow admission of the evidence obtained pursuant to the warrant. We disagree.

The *Leon* exception does not apply here because *Leon* only prohibits penalizing officers for their good-faith reliance on magistrates' probable cause determinations. Here, the exclusionary rule operates to penalize the officers for their violation of Mowatt's rights *that preceded the magistrate's involvement. See United States v. Vasey*, 834 F.2d 782, 789 (9th Cir. 1987) (holding that *Leon* exception did not apply when warrant was based on information obtained in illegal warrantless search because "[t]he constitutional error was made by the officer . . ., not by the magistrate"). Even if the magistrate here had somehow reviewed the facts underlying the officers' original entry

into Mowatt's apartment—which he did not[10]—and determined that there had been no constitutional violation, that would make no difference as the government cannot show that the decision to seek the warrant—and thus involve the magistrate—was not prompted by the original illegal search. *See United States v. McGough*, 412 F.3d 1232, 1240 (11th Cir. 2005) (holding that *Leon* exception did not apply when it was "the officers' unlawful entry . . . that led to [the] request for a search warrant"). The evidence seized pursuant to the warrant therefore must be suppressed.

## III.

For all the foregoing reasons, we conclude that the district court erred in denying Mowatt's suppression motion. We therefore vacate Mowatt's convictions and remand to the district court for further proceedings.[11]

*REVERSED AND REMANDED*

---

[10]Notwithstanding the government's contention that the warrant application "included their entire exchange with Mowatt," the application does not include the facts that the officers identified themselves as police or demanded that the door be opened. As far as the application reflects, Mowatt's decision to open his door could have been wholly voluntary.

[11]Mowatt also challenges the admission of certain evidence at trial. Although we have grave concerns about the admissibility of the challenged evidence, because we vacate the judgment on the basis of the suppression issue, we do not address the evidentiary questions.