**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-4774**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

SHIRLAND L. FITZGERALD,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of Virginia, at Danville.  Samuel G. Wilson, District Judge.  (4:08-cr-00001-sgw-mfu-1)

Argued:  December 10, 2010            Decided:  March 10, 2011

Before MOTZ, GREGORY, and WYNN, Circuit Judges.

Affirmed by unpublished opinion.  Judge Gregory wrote the opinion, in which Judge Motz and Judge Wynn joined.

**ARGUED:** Angela Dawn Whitley, THE WHITLEY LAW FIRM, Richmond, Virginia, for Appellant.  Anthony Paul Giorno, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee.  **ON BRIEF:** Timothy J. Heaphy, United States Attorney, Roanoke, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Circuit Judge:

This is an appeal from a jury conviction for six counts of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). Shirland Fitzgerald appealed his conviction and sentence on seven grounds: (1) the denial of a motion to suppress; (2) the insufficiency of the evidence; (3) the government's introduction of excluded evidence; (4) the grant of the government's motion to quash the subpoenas duces tecum; (5) the application of the sentencing guidelines from 2001; (6) the application of the sophisticated means enhancement to his sentence; and (7) the application of the obstruction of justice enhancement to his sentence. After consideration of the issues, we conclude that Fitzgerald's convictions and sentence should be affirmed.

I.

On April 27, 2003, while executing a lawful search warrant against Robert DeNova in Pittsylvania, Virginia, the Drug Enforcement Agency ("DEA") discovered documents related to several vehicle purchases from Fitzgerald Auto Sales in Danville, Virginia by a "known drug dealer," Jarett Doss. Fitzgerald Auto Sales is owned and operated by the defendant-appellant, Shirland Fitzgerald.

2

On April 28, 2003, while conducting an interview with Doss' father, DEA agents observed the arrival of Doss' girlfriend in a 2002 GMC Envoy which officers determined was purchased at Fitzgerald Auto Sales. The officers then seized the car as the fruit of illegal drug activities.

Later that day, after Fitzgerald had closed the car lot, a police officer placed a call to Fitzgerald posing as a potential car buyer. Approximately fifteen minutes later, Fitzgerald returned to the lot and was confronted by ten to eleven police officers. After Fitzgerald refused to give them permission to search the lot, Officer Robertson set out to obtain a search warrant.

At the suppression hearing, there was a factual dispute about the timing of the police search of the premises. Two officers, Nicholson and Robertson, testified that there was no search upon entry into the lot. They both stated that they only began searching after a warrant was obtained. Officer Taylor seemed to contradict this statement by stating that the search began almost immediately after Fitzgerald arrived to open the car lot. However, Taylor also testified that there was a warrant before he started searching the premises.

It is undisputed that after determining that they needed a warrant, the agents forced Fitzgerald to sit and wait for approximately an hour and a half while police secured a search

3

warrant for the premises.  This first search warrant gave police the right to search for documents relating to the sale of vehicles by Jarett Doss, Jared Doss, J&D Leasing, Shawn Samuels, Michael Henderson II, Crystal Tuck, Clarence Martin Jr., Robert DeNova, Michael Farmer, Eddie Fielders, and "any and all documents consistant [sic] with the laundering of drug proceeds." J.A. 80.  The government claims that the warrant was issued at 5:30 p.m. though there is no time stamp on the document.  The warrant articulates three facts to support a finding of probable cause for the warrant:  the documents retrieved at DeNova's trailer, Crystal Tucks' car registration, and Officer Robertson's experience.

At 7:57 p.m., the police sought and obtained a second warrant to remove "various documents relating to the sale of conveyances." J.A. 89.  On April 29, 2003, a third search warrant was executed on Fitzgerald's residence.  This time, the scope of the search was much broader and sought evidence that Fitzgerald had been engaged in money laundering.

After the suppression hearing, the district court determined that Fitzgerald had been unlawfully seized while the police sought the warrant.  However, the district court ultimately concluded that since no illegally obtained evidence was used to procure the search warrants, the evidence obtained

4

from the search warrants was "sufficiently distinguishable to be purged from the unlawful detention." J.A. 263.

At trial, the government introduced evidence that Fitzgerald attempted to conceal his crime after the search warrants were executed. For example, on May 19, 2003, Fitzgerald participated in a conversation with Bobby Doss, Jarett Doss' father, in which he agreed to sell two cars belonging to Jarett and give the proceeds to Bobby. Also, after Fred Rogers was arrested in connection with the conspiracy, Theresa Tyler, his sister, visited Fitzgerald to tell him to stick to the "story" that the car was purchased by Tyler not Rogers. Finally, an audiotape was played at trial which revealed conversations between Fitzgerald and co-conspirators about ensuring that they all tell the same story.

On September 10, 2008, the government filed a Second Superseding indictment naming Fitzgerald that included seven counts against him for conspiracy to launder money in violation of 18 U.S.C. § 1956(a)(1)(B) and 18 U.S.C. § 1956(h).

On October 20, 2008, the government filed a notice of 404(b) evidence, announcing that it planned to introduce evidence that Fitzgerald had participated in narcotics deals with Clarence Martin, Sr. to prove that he knew the source of the funds used to purchase cars. Fitzgerald objected.

On April 6, 2009, less than a month before trial was set to start, Fitzgerald filed subpoenas duces tecum seeking, among other things, documentation from various Danville car dealerships about their sales practices over several years. The government objected to the issuance of the subpoenas because they were not timely[1] and there was no showing of relevancy, admissibility, and specificity of the evidence sought. On April 9, 2009, the district court partially granted the motion to quash based on the government's objections.

Trial commenced on May 4, 2009. During the trial, Quentin Pinchback testified that Fitzgerald was involved in drug dealing. Fitzgerald's attorney moved for a mistrial based on the prejudicial nature of the testimony. The motion was denied and the court gave a curative instruction to the jury -- telling them to ignore the impermissible evidence. Later, Clarence Trent testified about Fitzgerald's alleged drug dealing past and the court again instructed the jury to disregard it.

At trial, Fitzgerald testified that he did not know that the cars were being sold to drug dealers. He believed that Doss was leasing the cars he bought and/or selling them with a mark up. There was also testimony that Rhonda Carter, Fitzgerald's girlfriend, would gamble with Doss and some of his associates

---

[1] The deadline for completing discovery was November 2008.

after the lot was closed. They would play dice and cards. Fitzgerald testified that he did not participate in the games, did not like that they occurred, but did not feel that he could interfere since Doss was a customer.

Fitzgerald was convicted of six of the seven counts against him and sentenced to 140 months in prison on August 11, 2009.

## II.

### A. Motion to Suppress

On appeal from a motion to suppress, this Court reviews the factual findings of a district court for clear error, and reviews legal determinations de novo. United States v. Wardrick, 350 F.3d 446, 451 (4th Cir. 2003). Probable cause determinations by a trial court are given great deference. United States v. Hurwitz, 459 F.3d 463, 473 (4th Cir. 2006).

We adopt the district court's reasoning with respect to the motion to suppress. In its opinion, the district court found that (1) Fitzgerald was illegally detained; (2) the search warrant was valid; and (3) the search warrant was obtained without any fruits from the illegal detention.

Fitzgerald was illegally seized while he waited for the police to obtain the first search warrant. A seizure occurs when "taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a

7

reasonable person that he was not at liberty to ignore the police presence and go about his business." Kaupp v. Texas, 538 U.S. 626, 629 (2003) (internal quotations and citations omitted). The district court concluded that Fitzgerald was illegally seized based on several facts including that he was "lured" to the lot on false pretenses; he was confronted by ten to eleven officers with visible weapons; and he was forced to sit in a chair while he waited for the warrant to be obtained.

The search warrant was valid on its face. In their warrant application the police relied on three facts: the documents retrieved at DeNova's trailer, Crystal Tucks' car registration, and the officer's experience. We find that the facts articulated in the warrant are sufficient to form the basis for a probable cause determination and to believe that the fruits of a crime are contained within the parking garage.

The search warrant was not tainted by the illegal seizure. To determine whether evidence is inadmissible as a result of an illegal seizure, the court asks "whether the search pursuant to warrant was in fact a genuinely independent source of the information and tangible evidence at issue here." Murray v. United States, 487 U.S. 533, 542 (1988). Evidence obtained by a search warrant is not admissible if the "decision to seek the warrant was prompted by what [the police] had seen during [an] initial [unconstitutional] entry, or if information obtained

8

during [an unconstitutional] entry was presented to the Magistrate and affected his decision to issue the warrant." Id.; see also United States v. Mowatt, 513 F.3d 395, 405 (4th Cir. 2008) (where an illegal search or seizure has occurred, the government must show that "the decision to seek the warrant--and thus involve the magistrate--was not prompted by the original illegal search.").

Here, there is no evidence that the illegal seizure influenced the magistrate's decision to grant a search warrant. In determining that the seizure was not tainted, the district court relied on the testimony of Officers Robertson and Nicholson who said that they did not search the premises until they obtained a search warrant.[2] We find that this reliance was appropriate.

## B. Sufficiency of the Evidence

In determining whether the evidence was sufficient to support a conviction, a reviewing court must determine whether "any rational trier of fact could have found the essential

---

[2] Fitzgerald claims that Officer Taylor testified that the premises were searched before then, but Taylor's testimony is that the search only happened after Fitzgerald had been handed a search warrant. Furthermore, in Fitzgerald's own testimony at the suppression hearing, he testified that the premises were not searched until the search warrant was obtained. In any event, the district court concluded that no improper search took place, and we find this determination to be reasonable.

9

elements of the crime beyond a reasonable doubt." United States v. Madrigal-Valadez, 561 F.3d 370, 374 (4th Cir. 2009) (quotation omitted). Issues of law are reviewed de novo. Id.

Fitzgerald argues that the government failed to present sufficient evidence to show that he had the requisite intent to show a conspiratorial agreement. The district court gave the jury a 'willful blindness' instruction which stated that "[t]he law says that if there is something obvious that anyone would see, anyone would recognize, you can't bury your head in the sand and expect to get out that easy." J.A. 1524. Fitzgerald argues that this is essentially reading a negligence standard into the count and that this confused the jury where there was not sufficient evidence to convict.[3]

In an effort to prove that there was not sufficient conspiratorial intent, Fitzgerald points out that he charged Doss the regular rates for cars, did not conceal the transactions, and reported his profits on his income tax documents.

The government contends that there is more than enough evidence of conspiratorial intent to justify upholding Fitzgerald's conviction. The government articulates several

---

[3] Fitzgerald did point out that the court also instructed the jury that this is a higher standard than "more likely than not."

10

facts from the record which support his conviction, including that he received almost $1,000,000 in proceeds from known drug dealers; he used straw purchasers; and he was careful to record transactions in increments under $10,000 so as not to be required to report it. Additionally, at least one witness, Michael Henderson, testified at trial that the organization openly bought cars to launder money; that Fitzgerald had lent out cars to members of the drug cartel who left drugs in the car and were reprimanded because Fitzgerald said it could get him in trouble; and that Fitzgerald was present during discussions of the drug selling business on several occasions.

We find that there is sufficient evidence on the record to support a conviction for conspiracy involving the Doss drug cartel and Fitzgerald.

## C. Motion for a Mistrial

A denial of a motion for a mistrial is reviewed for abuse of discretion. United States v. Dorsey, 45 F.3d 809, 817 (4th Cir. 1992).

Fitzgerald argues that the district court erred in failing to grant a mistrial where evidence of past crimes was presented to the jury despite the court's instructions to the government otherwise. During the government's direct examination of Quentin Pinchback, Mr. Pinchback indicated that Fitzgerald was a known drug dealer. The district court concluded that this

11

evidence was inadmissible under the Fed. R. Evid. 403 and gave a curative instruction to the jury. Despite this, the government elicited similar statements from Clarence Trent, and went on to ask that witness specifically whether he had any contact with Fitzgerald regarding drug transactions. The court admonished the government and took Fitzgerald's contemporaneous motion for a mistrial under advisement. The district court later concluded that its curative instruction was sufficient to mitigate the prejudice.

The government contends that these statements were not sufficient to declare a mistrial and that the district court properly denied the motion for a mistrial.

While we are troubled by the actions of the government with respect to this matter, we cannot find that a mistrial is appropriate for two reasons. First, despite their questionable efficacy, curative instructions are presumed to be effective. United States v. Johnson, 587 F.3d 625, 631 (4th Cir. 2009). Therefore, the alleged prejudice was mitigated when the district court instructed the jury to disregard the testimony. Second, the overwhelming evidence against Fitzgerald in this matter outweighs any of the potential prejudice stemming from the statements made by the witnesses in this case.

### D. Motion to Quash

The district court's grant of a motion to quash is reviewed for abuse of discretion. United States v. Bennett, 675 F.2d 596 (4th Cir. 1982).

Fitzgerald argues that the district court erred in granting the government's motion to quash the subpoenas duces tecum. Fitzgerald argues that the government lacked standing to quash the subpoenas duces tecum since it had no privilege or proprietary interest in the information sought by subpoena.

The government argues that Fitzgerald failed to make an adequate showing of the required relevancy, admissibility, and specificity. United States v. Fowler, 932 F.2d 306, 311 (4th Cir. 1991) (citation omitted).

We find that the trial court did not abuse its discretion in quashing Fitzgerald's subpoenas. We do not reach the merits of Fitzgerald's argument that the government lacked standing to bring a motion to quash. For a valid subpoena, a party must show that the material subpoenaed meets the requirements of "(1) relevancy; (2) admissibility; [and] (3) specificity." United States v. Nixon, 418 U.S. 683, 700 (1974) (cited with approval in United States v. Richardson, 607 F.3d 357, 368 (4th Cir. 2010)). Subpoenas duces tecum must be "made in good faith and [must] not [be] intended as a general 'fishing expedition.'" Id. The only reason given in Fitzgerald's motion for the

13

subpoenas was "for the defendant to raise his defense of innocence, as well as cast doubt on the evidence of the government." J.A. 292. While its true that the defendant provided more details in the hearing, ultimately the trial court concluded and we agree that defendant failed to make the necessary showing. Additionally, it should be noted that requests for the subpoenas came nearly five months after discovery had been closed.

### E. Ex Post Facto Sentencing

Fitzgerald argues that the district court erred in applying sentencing guidelines from 2001 when the activity took place two years before that date.

The government argues that there is no error since the conspiracy spanned from 1999 to 2004 and therefore the 2001 guidelines were appropriately applied. Furthermore, the government points out that Fitzgerald failed to object at the time of sentencing and thus, this issue is reviewed for plain error.

The Fourth Circuit has previously held that "[c]onspiracy is a continuing offense," and a district court may validly apply sentencing guidelines from any time during the conspiracy. United States v. Meitinger, 901 F.2d 27, 28 (4th Cir. 1990). Since this was true when the guidelines were mandatory, this

14

Court can find no reason to overturn this precedent, now that the guidelines are merely advisory.

## F. Sophisticated Means

Fitzgerald argues that the district court erred in applying a sophisticated means enhancement since there is no evidence that he utilized the type of tools imagined by the guidelines in § 2S1.1(b)(3), n.5(A). Furthermore, Fitzgerald argues that his lack of a high school education should preclude him from being described as sophisticated. Fitzgerald argues that this case should be remanded for resentencing.

The government argues that Fitzgerald devised a multi-layered scheme to conceal the sources of the cash and identities of those paying for the cars and that this is sufficient to find sophisticated means were used to carry out these crimes.

We find that the sophisticated means enhancement was appropriately applied. Courts have found that sophisticated means were used when individuals used other people to hide assets, United States v. Middlemiss, 217 F.3d 112, 124 (2d Cir. 2000); and structured cash deals to avoid reporting, United States v. Gricco, 277 F.3d 339 (3d Cir. 2002); United States v. Guidry, 199 F.3d 1150, 1158-59 (10th Cir. 1999). The Seventh Circuit has explained that the "essence of the definition [of sophisticated means] is merely deliberate steps taken to make the offense difficult to detect." United States v. Kontny, 238

15

F.3d 815, 821 (7th Cir. 2001) (ellipses and quotations omitted).
Here, Fitzgerald used many straw purchasers[4] to hide assets and
avoided transactions under $10,000 to evade detection. We also
consider that over $1,000,000 worth of transactions were
attributed to this scheme. Additionally, we see no reason that
Fitzgerald's lack of formal education would preclude him from
employing sophisticated means in this matter. Therefore, we
find that there is sufficient evidence to apply a sophisticated
means enhancement.

## G. Obstruction of Justice

Fitzgerald argues that the district court erred in applying
the obstruction of justice enhancement since the basis for the
enhancement happened before he was indicted or investigated for
the crimes for which he has been found guilty.

The obstruction of justice enhancement was based on
evidence that Fitzgerald attempted to sell Jarett Doss' cars,
which were evidence of crimes, after Doss was arrested.
Additionally, a tape recording reveals that Fitzgerald attempted
to keep stories consistent amongst co-conspirators in order to
deceive the police about the nature of the conspiracy.

---

[4] Straw purchasers refers to individuals and companies who
are named or listed as "purchasers" for paperwork purposes in
order to disguise the actual buyer and source of the money in a
transaction.

16

The government argues that this evidence is enough to warrant an obstruction of justice enhancement.  We agree and find that the district court was correct in concluding that Fitzgerald was aware of the investigation before he attempted to dispose of evidence and conceal the crime with other conspirators.  Therefore, the sentencing enhancement was appropriately applied.

## III.

For the foregoing reasons, we affirm the judgment of the district court.

<u>AFFIRMED</u>